STATE of Missouri, Respondent,

v.

Charles BERSTEIN, a/k/a Chuck Berns, Appellant.

No. 49376.

Supreme Court of Missouri,

Division No. 2.

Oct. 14, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied Nov. 11, 1963.

**58**

Norman S. London, St. Louis, for defendant-appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Ike Skelton, Jr., Special Asst. Atty. Gen., Lexington, for respondent.

JACK P. PRITCHARD, Commissioner.

Defendant was found guilty on a charge by indictment of the grand jury of buying and receiving stolen property in the amount of value over $50.00, and his punishment was assessed by the jury at four years in the Department of Corrections. After his motion for new trial was overruled and allocution was granted, sentence on the verdict was pronounced by the trial court, and defendant duly appealed from his judgment of conviction.

The facts leading up to defendant's trial and conviction are these: On March 15, 1961, the home of Mr. and Mrs. Fred Langbein, 3876 Federer, St. Louis, Missouri, was burglarized sometime in the afternoon, and some $1,500.00 of their property therein was stolen, among which property were two oil paintings. The Langbeins reported the incident to the police immediately, gave them a list of the stolen property, and the officers came to their home to make investigation on the same day.

On March 29, 1961, Officer Harold Schriefer and Sergeant Klein went to the premises of defendant at Union and Palm Streets in the City of St. Louis, this being the next day after Klein had received an anonymous telephone call. As they were turning their car onto Union Street, they saw one Joseph Gilberti and defendant talking on the sidewalk just adjacent to defendant's used car lot. Defendant then walked away and Gilberti got into his car and drove north on Union Street to San Francisco Street where he turned east. The officers followed Gilberti for some time, there being some truck traffic between the two automobiles, and finally came up to him about the 4800 block on Natural Bridge. The officers then stopped Gilberti, placed him under arrest and asked him to open the trunk of his car, which he did, and the two oil paintings, State's Exhibits 1 and 2, identified as the property of the Langbeins, were found therein.

The following day, March 30, 1961, at about 11:50 a. m., at Natural Bridge and Union, at Frances Auto Sales, Sergeant Klein assisted in defendant's arrest, for which there was no warrant, following which defendant was taken to Police Headquarters, booked and was placed in holdover.

Upon being booked, defendant's billfold was taken from him by the officers, placed in a property envelope, and later certain papers, including the original of State's ·Exhibit 3 (the card list testified to by the

State's principal witness, Barnes, as having been written upon by defendant in recording the amounts paid Barnes by defendant for stolen property), were photocopied by the police. Thereafter, upon defendant's release, the originals of these papers, including the original of State's Exhibit 3, were returned to him.

No issue is made here as to the submissibility of the State's case, but defendant complains of rulings of the trial court made during trial and in pretrial conferences. Those issues which are necessary to a determination of this appeal are set out below.

Defendant first says that the trial court erred in overruling his pretrial motion to suppress evidence, State's Exhibit 3, the original of which was taken by the officers from the defendant and photocopied after his arrest and at the time of his being booked and placed in holdover, on the ground that the arrest was unlawful and without probable cause to justify same.

■ It has long been the rule in this state, and many cases set it forth, that a peace officer may arrest without a warrant anyone who he has reasonable grounds to believe has committed a felony. State v. Williams and Wann, 328 Mo. 627, 14 S.W. 2d 434; State v. Whitley, Mo., 183 S.W. 317, 320[4]; State v. Evans, 161 Mo. 95, 110, 61 S.W. 590; State v. Cushenberry, 157 Mo. 168, 56 S.W. 737, 742; State v. Grant, 79 Mo. 113. The officer may arrest any person upon suspicion who is in fact guilty of a recent felony, whether the officer be advised of such felony or not. State v. Whitley, supra; State v. Cantrell, Mo., 310 S.W.2d 866; State v. Edwards, Mo., 317 S.W.2d 441; State v. Brown, Mo., 291 S.W.2d 615, 618[2–4]; State v. Brookshire, Mo., 353 S.W.2d 681, 684[7–9].

As to what constitutes reasonable grounds or probable cause for the officer to arrest without a warrant, it was said in State v. Cantrell, supra, loc. cit. 869[6] of 310 S.W.2d, "What constitutes 'a rea-sonable and probable ground of suspicion is incapable of exact definition, beyond saying that the officer must not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to prevent mistakes. In other words, he must be actuated by such motives as would influence a reasonable man acting in good faith.' "

■ Being guided by the cited rule, it is clear in the instant case that the officers did not act arbitrarily. Here, the evidence is that the officers had actual, prior knowledge that a burglary and theft had been committed at the Langbein home and they had a list of the stolen property. It was common knowledge at the Police Headquarters that defendant was suspected of receiving stolen property; the officers had received an anonymous telephone call that caused them to proceed to defendant's premises (although it does not appear from this record as to what was discussed, objections being sustained as to this subject); upon arrival at defendant's premises, they saw him talking to Gilberti in whose possession the Langbeins' stolen paintings were found upon Gilberti's arrest. In addition, under the evidence presented the jury found defendant guilty of the felony as charged. We cannot say that the officers acted unreasonably in arresting defendant or without probable cause. Under the circumstances, his arrest was legal, and State's Exhibit 3 was not rendered inadmissible by such arrest.

■ Of course, it follows that having lawfully arrested defendant upon suspicion that he was implicated in the felony that had been committed, the officers had a right to search his person and to take into their possession any incriminating evidence, including State's Exhibit 3. State v. Raines, 339 Mo. 884, 98 S.W.2d 580, 584[6, 7]; State v. Martin, 357 Mo. 368, 208 S.W.2d 203; State v. Hands, Mo., 260 S.W.2d 14.

On October 4, 1961, five days before the trial, defendant filed his "Motion to Strike

Witness," moving the court to strike from the indictment the name of Robert Earl Barnes and for further order that the plaintiff not be permitted to use said Robert Earl Barnes as a witness for the reason that defendant "has, at the request, order and instruction of the plaintiff been denied the right and opportunity to interview and interrogate said Robert Earl Barnes, and that as a result thereof, defendant has been denied his right and opportunity to properly and adequately prepare his defense * * *."

On the hearing on the motion on October 5, 1961, the following proceedings were had:

"MR. LONDON: May it be stipulated that in the indictment in this cause one Robert Earl Barnes has been endorsed by the State as a witness. That last evening I went to the Second District Station where Robert Earl Barnes is incarcerated and requested the opportunity to speak with him to interview him, stating that I was not his attorney but that I was the attorney for the defendant in this case and that he had been endorsed as a witness. I was denied the right or privilege of interviewing or talking to him. I have discussed this matter with Mr. Reardon, and it is my understanding that Mr. Reardon has instructed the police that he is not to be interviewed, that I may take his deposition, if that is my desire, but as far as investigating the case, or interviewing Mr. Barnes, or talking to Mr. Barnes, that I am not to be allowed to do so.

"MR. BANTLE: That is right.

"MR. LONDON: Will the State stipulate to those facts?

"MR. BANTLE: It is my understanding. I want to add the additional fact, if it was Mr. London's desire to privately interview him, of course he has not been made available for that purpose.

"THE COURT: And I assume from what you said Mr. London is not going to take his deposition?

"MR. LONDON: No, sir, I don't feel I want to take his deposition for the purpose of possibly making him my witness.

"THE COURT: I am not saying to make him your witness by taking his deposition.

"MR. LONDON: I would be in a sense perpetuating his testimony in the event that the State was unable to put him on for any reason, if for some reason this man should be called by St. Louis County or any other jurisdiction and he would be unavailable.

"Would I be allowed to interview him if it were not in private. I don't say it has to be a private interview. I just say I wanted to interview him and discuss certain matters with him relative to his function in this case as a witness.

"THE COURT: I don't think that is a matter that we are going to answer as a court. You can take that up with Mr. Reardon. I find no basis from my knowledge of the law for the motion, and I overrule the motion to strike the witness."

It is to be noted from the record that Barnes was the principal witness by whom the state made its submissible case against defendant. Barnes, an accomplice, in turning state's evidence, testified directly concerning the sale of the two oil paintings (and other property stolen at the same time), and he also testified concerning other dealings in stolen property with the defendant. Barnes himself was charged with nine separate offenses in the City of St. Louis and in St. Louis County, and he admitted on the witness stand that he had committed in the past some 200 burglaries.

■ No Missouri case has been cited to this court by either party, and we have found none, directly deciding the right of a defendant in a criminal case, by his counsel, to interview prospective material witnesses for the State who are incarcerated at the time the interview is requested. The better view, in cases from other jurisdic-

tions, under the circumstances which are here present, is that defendant has such a right, and to deny the same to him is an abuse of discretion amounting to error. See Annotation, 124 A.L.R. 454.

The reasons for the rule in those states which accord to defendant the right to interview a material witness in jail are similarly stated. In State v. Papa, 32 R.I. 453, 80 A. 12, 15, the court said, "The attorney for the defendant, not only had the right, but it was his plain duty towards his client, to fully investigate the case and to interview and examine as many as possible of the eyewitnesses to the assault in question, together with any other persons who might be able to assist him in ascertaining the truth concerning the event in controversy. Witnesses are not parties, and should not be partisans. They do not belong to either side of the controversy. They may be summoned by one or the other or both, but are not retained by either. It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence applicable to the case to use or not as might be deemed most advantageous."

In the case of Exleton v. State, 30 Okl. Cr. 224, 235 P. 627, at the beginning of the trial, counsel for defendant, in open court, stated that the name of witness Waters had appeared on the information, and was on the list of witnesses furnished by the state, and stated to the court that the witness was confined in the jail of Garwin County. A request to the sheriff to interview or confer with the witness was denied. The trial court, upon defendant's repeated requests to interview the witness, denied same, and in reversing the case the appellate court said: "Where a material witness, and particularly as in this case, an accomplice, is incarcerated in jail and to that extent under the control of the prosecution, and the defendant makes application for leave to interview or question such witness in reference to his testimony, under all the facts shown here, the court should afford a reasonable opportunity for such purpose, and the denial of the request of the defendant was error." See also, Bobo v. Commonwealth, 187 Va. 774, 48 S.E.2d 213; Gallman v. State, 29 Ala.Sup. 264, 195 So. 768; People v. Earle, 17 Misc.2d 157, 183 N.Y.S.2d 586; Wilson v. State, 93 Ga.App. 229, 91 S.E.2d 201, 202.

The State contends here that the defendant did not make proper application to the court to interview witness Barnes. It is true that the matter was first brought to the court's attention by the "Motion to Strike" the name of the witness from the indictment. While defendant could have more specifically brought the matter before the court by a motion to interview witness, or by application for a writ of habeas corpus ad testificandum, we think the defendant, in the hearing on the motion in addition to what was stated in the motion to strike, sufficiently presented his request to the trial court.

In order to avoid coercion or intimidation of the witness for the prosecution, and so as not to hamper the defendant's counsel, the interview with the witness should be conducted out of the presence of the prosecutor and with as much privacy as is consistent with reasonable security measures of the prison, Gallman v. State, supra; Bobo v. Commonwealth, supra.

Since this case must be retried for error in not granting to defendant the right to interview witness Barnes, other claimed errors, although there may be merit in some of them, are not likely to recur upon new trial.

The judgment of the trial court is reversed and this case is remanded for new trial.

BARRETT and STOCKARD, CC., concurs.

PER CURIAM.

The foregoing opinion by JACK P. PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.