**City of KANSAS CITY, Respondent,**

v.

**Paul Gale BUTTERS, Appellant.**

**No. KCD 26733.**

Missouri Court of Appeals, Kansas City District.

March 4, 1974.

Sloan R. Wilson, Hill, McMullin & Wilson, Kansas City, for appellant.

Aaron A. Wilson, City Counselor, Louis W. Benecke, City Prosecutor, Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Defendant was convicted of possession of marijuana (the record is silent as to the amount) in violation of the Revised Ordinances of Kansas City, Missouri, 1966, as Amended, Chapter 18, Section 152, and his punishment was fixed at a fine of $25.00. Following rendition of judgment and imposition of punishment, an appeal was perfected by defendant to this court.

■ It may be said initially that although this is a case involving minimal punishment, a critical constitutional issue is involved. A constitutional question is no less viable, or of lower case dignity, simply because it emanates from an ordinance violation which resulted in a minimal fine. Such a constitutional issue stands with magnum force alongside a like constitutional issue emanating from a major offense resulting in maximum punishment and both deserve equal judicial consideration.

Prior to trial defendant filed a timely motion to suppress the marijuana upon which the charged ordinance violation was predicated, which motion was denied. At this juncture, the defendant and the city stipulated that the evidence heard by the court relative to defendant's motion to suppress, coupled with defendant's open court admission that the substance in question was, in fact, marijuana, constituted all the evidence to be presented at defendant's trial on the merits of the case. A jury was waived and the case was submitted to the court per the joint stipulation and open court admission. Defendant's oral motion for acquittal was denied and defendant was found guilty by the court.

Defendant's postulate for reversal and unconditional acquittal is that the marijuana in question should have been suppressed and excluded from evidence because illegally obtained as the result of an unreasonable warrantless search in violation of the Fourth Amendment of the Constitution of the United States, and if suppressed and excluded, there was not sufficient substantive evidence to support his conviction.

A common temptation in resolving "search and seizure" cases, resistance to which requires constant judicial discipline, is to engage in doctrinaire statements of law with, at best, only a superficial analysis of the underlying facts. Judicial determination of constitutionally proscribed "unreasonable searches and seizures" necessarily turns on the "concrete factual context of the individual case". Sibron v. State of New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917, 932 (1968).

The following constitutes the "concrete factual context" upon which this appeal must be decided. On December 5, 1972, at approximately 5:07 A.M., a patrolman of the Kansas City, Missouri, Police Department stopped a beige 1967 Chevrolet automobile being driven by a female at or near 39th and Harrison Streets, in Kansas City. The patrolman stopped the vehicle for violation of a traffic ordinance, "one of the headlights' was out". After the automobile was stopped, the patrolman approached it and, in doing so, smelled what he believed to be the odor of marijuana. He described the odor as "medium to strong". Besides the female driver, the automobile was occupied by defendant, a male, and another female. The record is silent as to the seating arrangement of the passengers. The patrolman was unable to pinpoint the odor of marijuana as emanating from the occupants of the automobile, much less the defendant, nor did he see any marijuana being smoked by defendant, or any of the other occupants of the automobile. Additionally, he did not, in fact, see any marijuana whatsoever until removing such from defendant under cir-

cumstances hereinafter described. The patrolman further testified that the odor of marijuana he smelled could have been present in the automobile before defendant entered it. The record is silent as to how long defendant had been in the automobile.

The patrolman made no request of the occupants to get out of the automobile until after he radioed for assistance and assistance arrived. After assistance arrived, the patrolman requested the occupants of the automobile to get out, which they did, apparently without any incidents of trouble, resistance or remonstrance. After the three occupants got out of the automobile the patrolman notified the female driver of the vehicle that she had been stopped for a traffic violation. The patrolman made no effort to arrest the female driver at that time. Next, the patrolman "frisked" or "patted-down" defendant for weapons. The patrolman did not "frisk" or "pat-down" either of the two female occupants and, in explanation for not doing so, testified that "procedure requires" patrolmen not to "frisk" or "pat-down" females unless a patrolman has "strong reason to believe that they have a concealed weapon on their person". Conversely, the patrolman testified that "standard procedure" dictates the "frisking" or "patting-down" of "every male we come in contact with for our own protection, to insure that they do not have a weapon". The patrolman further testified that such "standard procedure" was followed with respect to defendant even though there was nothing that caused him to believe that defendant was carrying any kind of a weapon, and, further, defendant at no time directed any threatening gestures or remarks toward the patrolman, or toward anyone else. The patrolman unequivocally testified that he "frisked" or "patted-down" defendant for the simple reason that to do so was just "standard procedure".

While the patrolman was "frisking" or "patting-down" defendant, described by him as "feeling of the clothing, without going inside the clothing, inside the pockets", he felt a "long, hard object" which he "had cause to believe could have been a weapon". Upon feeling the "long, hard object", the patrolman conducted a "search" of defendant's person, at which time a pipe and Bufferin tin containing marijuana were discovered and removed from defendant's person by the patrolman. The patrolman testified that after removing the pipe and Bufferin tin containing marijuana from defendant's person he placed defendant under arrest.

The following positive testimony given by the patrolman can not be ignored in determining the "concrete factual context" upon which this appeal must be decided. The patrolman testified that defendant was not placed under arrest until after the person of defendant had been searched and the pipe and Bufferin tin containing marijuana discovered. The search preceded, rather than followed, defendant's arrest, according to the testimony of the patrolman. Additionally, the patrolman testified that he *did not* search the defendant "to confirm" any "suspicion that someone had some marijuana".

The patrolman also testified that prior to stopping the vehicle occupied by defendant and the two females he had no information whatsoever to cause him to be on the alert for an automobile answering the description of the one he stopped because the occupants of an automobile answering such description were suspected of engaging in some type of criminal activity. To the contrary, strictly by chance, he observed the vehicle in question being operated with one of its headlights out and that alone occasioned his stopping the automobile.

The mandate of the Fourth Amendment of the Constitution of the United States, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .", upon which the "exclusionary rule" pronounced in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) was bot-

tomed and which was subsequently held applicable to state court criminal actions via the Fourteenth Amendment in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), is a suit of armour the people of this country clothed themselves with to protect them from unrestricted intrusions by government into the privacy of their persons and property regardless of the guise of the intrusion. This mandate was never intended to constitute an affirmative tool for law enforcement, rather its sole purpose is to protect the people. True, it does not prohibit all searches and seizures, but it does afford absolute protection to the people from unreasonable searches and seizures which is the very reason for its being. Its absolute protection against unreasonable searches and seizures dominates even though the end result restricts criminal prosecution to the extent that absent the protective mantle afforded by it, such prosecution would have otherwise resulted in the conviction of an accused. The people alone, not the courts, possess the right and power to change this inevitable result.

In view of the above there is no recourse from obliterating defendant's obvious guilt of the charged ordinance violation from consideration, and the sole consideration is whether the marijuana in question was obtained by an unreasonable and therefore constitutionally interdicted search.

 A properly issued search warrant does not stand alone as the only means by which the Fourth Amendment requirement of reasonableness can be met. The Fourth Amendment's absolute admonition against unreasonable searches is not violated, (1) by a search incident to a lawful arrest, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), (2) by protective searches by officers for weapons upon less than probable cause to arrest, Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), (3) by seizure of items falling within the "plain view" doctrine, Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), nor (4) by the search of a motor vehicle where "probable cause" exists to believe that it contains a substance which offends against the law, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 453 (1925) and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970).

It is patent that neither the "plain view" doctrine nor the search of a motor vehicle upon the existence of probable cause offer any viable measure by which to determine whether the warrantless search in the case at bar was reasonable or unreasonable under the Fourth Amendment. If defendant's charge that the search was unreasonable is to prevail, it must be on the basis that (1) it did not constitute a search incident to a lawful arrest, nor (2) was it justified as flowing from a protective search for weapons.

 In the "concrete factual context" of this case, was the warrantless search incident to a lawful arrest? As stated in United States v. Robinson, supra, "it is the fact of the lawful arrest which establishes the authority to search". Subject only to limited qualification [see State v. Funk, 490 S.W.2d 354 (Mo.App.1973)— and no facts exist in this case to raise such limited qualification], the general rule is that the arrest must precede the search in point of time. [State v. Witherspoon, 460 S.W.2d 281 (Mo.1970)]. Further, the person making the arrest may not fall back on the subsequent discovery of incriminating evidence to uphold the validity of a warrantless arrest [State v. Goodman, 449 S.W. 2d 656 (Mo.1970)].

 Sections 84.440 and 84.710, RSMo 1969, V.A.M.S., constituted authority for the patrolman, by virtue of his being a police officer of Kansas City, Missouri, to have effected a lawful warrantless arrest of defendant, if he had "reasonable ground to believe" that defendant had "committed either a felony or misdemeanor" or had

"violated an ordinance of the city", even though such an offense did not occur in the presence of the patrolman. Kansas City v. Mathis, 409 S.W.2d 280, 287 (Mo. App.1966). It is explicit in Kansas City v. Mathis, supra, State v. Robinson, 484 S.W.2d 186, 190 (Mo.1972) and State v. Gant, 490 S.W.2d 46, 48 (Mo.1973) that the criterion for determining the existence of "reasonable" grounds to have supported a lawful warrantless arrest by the patrolman is two-pronged. One, reasonable grounds must have existed to cause the patrolman to believe that an offense had been or was being committed, and, two, reasonable grounds must have existed to cause the patrolman to believe that the defendant perpetrated the offense. Application of this two-pronged criterion to the "concrete factual context" controlling this appeal impels the conclusion that the patrolman did not effect a lawful warrantless arrest of defendant before conducting the search that resulted in discovery of the offending substance. This conclusion is impelled for two reasons. First, the patrolman candidly admitted that he was unable to pinpoint the odor of marijuana as emanating from the person of defendant. Second, and of far greater force and significance, assuming, arguendo, that the odor of marijuana *alone* constituted reasonable grounds to believe that an offense had been or was being committed,[1] the odor of marijuana testified to by the patrolman, insofar as it might have constituted reasonable grounds, was completely destroyed by the patrolman's positive testimony that he did not arrest defendant until after he searched him and discovered the marijuana and that he did not search defendant "to confirm" any "suspicion that some one had marijuana". This court studiously avoids the question of whether the subjective intent of an officer is determinative of whether an arrest has in fact been made. Total rejection however of the patrolman's positive testimony referred to would do violence to the principle that search and seizure questions are to be resolved in the "concrete factual context of the individual case." The only logical inference to be drawn from the patrolman's positive testimony that he did not arrest defendant until after he searched him and discovered the marijuana and did not search the defendant "to confirm" any "suspicion" that defendant had marijuana in his possession, is that the patrolman himself concluded that he had no grounds, reasonable or otherwise, to believe that defendant was perpetrating an offense. Perforce, the search conducted by the patrolman resulting in the discovery of the marijuana can not be justified as incident to a lawful arrest and, necessarily, did not constitute a reasonable search within the purview of Harris v. United States, supra, and United States v. Robinson, supra.

■ In the "concrete factual context" of this case, did the warrantless search flow from a protective search for weapons so as to render it a "reasonable search" under Terry v. State of Ohio, supra? In *Terry,* the Supreme Court of the United States, 88 S.Ct. 1868, 1884–1886, held:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot *and that the persons with whom he is dealing may be armed and presently dangerous,* where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and *where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety,* he is entitled for the protection of himself and others in the area *to conduct a care-*

---

1. See United States v. Kaplan, 89 F.2d 869 (CA 2, 1937) discussing Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932), and related federal cases decided subsequent to *Taylor,* as authority for the proposition that the Supreme Court of the United States has held that odor standing alone does not constitute reasonable grounds to support a warrantless search.

*fully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him."* (Emphasis added.)

In *Terry* the court held that the officer who "frisked and patted-down" Terry had reasonable cause to believe that Terry was armed and dangerous, and concluded that the search involved was a reasonable search under the Fourth Amendment and therefore a weapon seized from Terry was admissible in evidence. However, in Sibron v. State of New York, a companion case to *Terry*, the Supreme Court of the United States, 88 S.Ct. 1889, 1903, held:

> "The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, *he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.* Terry v. Ohio, supra. Patrolman Martin's testimony reveals no such facts. The suspect's mere act of talking with a number of known narcotic addicts over an eight-hour period no more gives rise to reasonable fear of life or limb on the part of the police officer than it justifies an arrest for committing a crime." (Emphasis added.)

In *Sibron* the court held that the officer conducting the search had no reasonable grounds to believe Sibron was armed and dangerous, and therefore concluded that the search constituted an unreasonable search under the Fourth Amendment and therefore certain heroin taken from Sibron should have been suppressed.

The search conducted by the patrolman in this case can not be justified under Terry v. Ohio, supra, but, to the contrary, falls within the condemnatory perimeter of Sibron v. State of New York, supra, by virtue of the patrolman's positive testimony that there was nothing to cause him to believe defendant was carrying any kind of weapon and defendant at no time directed any threatening gestures or remarks toward him. The patrolman, by his own testimony, sought to justify his search on the posit that he followed "standard procedure". If "standard procedure", as described by the patrolman's testimony, is permitted to usurp the judicial function of determining the reasonableness or unreasonableness of searches comportable with the Fourth Amendment, then the end result is to make every police department judge and jury of its own conduct, the very danger the people so zealously guarded against by their adoption of the Fourth Amendment.

■ This court is acutely cognizant that no category of cases draws the line so clearly between the possibility of restricting law enforcement and the possibility of evils arising from unrestricted law enforcement as do cases involving search and seizure. Be that as it may, this court has no right to defer determination of applicability of the Fourth Amendment until after an accused's innocence or guilt has been determined. Resolution of controlling applicability of the Fourth Amendment is apart from resolution of an accused's innocence or guilt.

■ The search by the patrolman in this case was unreasonable when measured by the mandate of the Fourth Amendment and the pipe and marijuana in question should have been suppressed. Since the city can not make a case without such evidence, the judgment is reversed and the defendant is discharged.

All concur.