STATE of Missouri, Plaintiff-Respondent,

v.

Ronald Charles DRAKE, Defendant-Appellant.

No. 34961.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 11, 1974.

Motion for Rehearing or Transfer Denied
July 15, 1974.

Frederick R. Buckles, David U. Uthoff, G. Jeffrey Lockett, Public Defender Bureau, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., W. Earl Jacobs, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant appeals his conviction by jury of stealing from a dwelling house. Defendant-appellant, by amended information, was charged with the felony of stealing from a dwelling house (§ 560.-161 RSMo 1969, V.A.M.S.) and pleaded not guilty. Preliminary hearing was held on the original information which had charged stealing over fifty dollars. The amended information was filed on July 31, 1972 charging, in addition, a prior felony conviction. A pretrial hearing was held on a motion to suppress evidence obtained pursuant to search at the time of arrest. The motion was overruled. As a result of the jury's verdict at a trial held in the Circuit Court, City of St. Louis, defendant was found guilty and sentenced by the trial judge to three years imprisonment.

On appeal, defendant assigns as error: (1) the denial of defendant's pretrial motion to suppress and initial objection to admission of certain evidence which defendant alleges was obtained by an illegal search; (2) the insufficiency of the evidence introduced to support the verdict given; (3) the denial of jury instruction offered by defendant; and (4) the lack of a preliminary hearing to support the amended information. We affirm the judgment.

On December 29, 1971, Helen Brown returned home from her day's labor at approximately 8:45 p. m. and found the door to her St. Louis apartment removed and several items of personal property missing, including a watch and three rings. In response to Ms. Brown's call, police officer Robert Atwood arrived at the apartment at about 9:50 p. m. to investigate the crime. While taking information from Ms. Brown outside her apartment doorway, Officer Atwood noticed defendant and his companion walking along the hallway toward the stairway about 6 to 8 feet from Ms. Brown's apartment. The police officer recognized defendant's companion from previous arrests. The police officer arrested defendant's companion and patted him down for weapons and found a watch in his hip pocket which was immediately identified by Ms. Brown as belonging to

her. The police officer then asked defendant whether he knew anything about the burglary, and the defendant denied any knowledge about it. The police officer then placed the defendant under arrest for burglary and also patted him down. At the police officer's request, defendant removed his wallet and opened it and three yellow metal rings were disclosed which were also identified by Ms. Brown as hers.

Defendant pleaded not guilty upon arraignment to a charge of stealing over fifty dollars. The information was later amended, without preliminary hearing, to stealing from a dwelling house and with one prior felony conviction.

The first issue is whether the arrest and search was valid, with defendant charging that there was no probable cause for his arrest and search and that, therefore, the product of the search was inadmissible. State v. Vineyard, 497 S.W.2d 821 (Mo. App.1973), holds that a warrantless arrest is valid where the police officer has probable cause to believe that an offense has been committed by the person arrested. In Vineyard, the court said, l. c. 825:

"*  *  * The evidence in issue to be admissible must be the product of a lawful arrest in the absence of a search warrant, and, in turn, the lawfulness of the arrest sans a warrant, is to be based and tested upon probable cause. State v. Novak, 428 S.W.2d 585, 591 [2, 3] (Mo. 1968). Police officers may arrest without a warrant if reasonable cause exists for them to believe that the person arrested is guilty of a recent felony [State v. Hammonds, 459 S.W.2d 365, 369 (Mo.1970); State v. Johnson, 420 S.W. 2d 305, 308 [2] (Mo.1967)], and 'Dealing with probable cause for arrest requires dealing with probabilities which are not technical but "are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved. *  *  * Probable

cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they have reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed," Brinegar v. United States, 338 U.S. 160, 175–176 [4], 69 S.Ct. 1302, 1311, 93 L.Ed. 1879, and "The substance of all the definitions (of probable cause) is a reasonable ground for belief of guilt," Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543.' State v. Novak, supra, 428 S.W.2d at 591 [6, 7]."

If the arrest is valid, a warrantless search may be conducted of the defendant's person and the area within his immediate control. Chimel v. California, 395 U.S. 752, 768, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). There is no requirement that the search be confined solely to a search for weapons; it may also be for fruits of the crime. Preston v. U. S., 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

The question, then, is whether probable cause existed for defendant's arrest and, if so, was the search reasonable. Did the officer in this case have probable cause to believe that the defendant was guilty of stealing from the dwelling of Ms. Brown? We believe so. Probable cause consists of the facts available to the officer at the moment of arrest and whether at the time such facts would warrant a man of reasonable caution to believe that an offense had been committed and whether at the time of the arrest the facts and circumstances within the knowledge of the police officer were sufficient to warrant a prudent man to believe that the defendant had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Maxwell, 502 S.W.2d 382 (Mo.App.1973). At the time of the arrest, Officer Atwood knew the following: a felony had been committed as recently as little more than

an hour before his investigation of the crime; defendant and a companion were walking in the hallway of the victim's apartment within a few feet of the crime; that the identity of defendant's companion was known to the police officer; that defendant's companion had had a record of previous arrests which were known to the police officer; that defendant and his companion acknowledged that they had been in the apartment building for a period of time prior to their effort to leave at the time the police officer apprehended them; that defendant's companion had in his pos-.session property which had recently been stolen from the victim's dwelling.

■ We believe that the foregoing accumulation of facts known to the police officer were sufficient to warrant a reasonable belief that the defendant had committed a crime. Of course, it is basic that an arrest with or without a warrant must stand upon more substantial ground than mere suspicion, although the arresting officer need not have in hand evidence that would be sufficient to result in a conviction of the defendant. Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The facts here establish that there was more than mere suspicion that defendant had committed a crime which gave Officer Atwood probable cause to make his arrest.

■ Defendant asserts that association with a known criminal is not, standing alone, reasonable grounds for arrest. State v. Seymour, 438 S.W.2d 161 (Mo. 1969). We agree. However, one known or reasonably suspected to be guilty of a crime may be a circumstance to be considered in connection with other circumstances tending to show probable cause to believe that such person has participated in criminal activity. State v. Seymour, supra at p. 163. The factual situation in Seymour is, however, distinguishable from the circumstances in this case, for in Seymour the arrest of defendant was based solely upon his association with a criminal sus-

pect and at a time and place remote from the crime. The court in Seymour said that association in and of itself was not reasonable grounds for arrest, and we agree. But there is more in this case. Here, a crime had been recently committed, the defendant was at the scene of the crime and in association with one who had in his possession fruits of the crime. Thus, there were sufficient circumstances to warrant a finding that the police officer had probable cause to arrest defendant. Defendant argues that the arrest of defendant's companion was illegal and the evidence obtained from defendant's companion was fruit of the poisonous tree, inasmuch as it was obtained as a result of the illegal search and seizure of defendant's companion; that the evidence obtained from defendant's companion cannot be pyramided into a circumstance upon which the arrest of defendant can lie. Walder v. U. S., 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). We do not need to decide whether defendant's companion's arrest was legal or not. Defendant does not have standing to attack the validity and search of his companion. Suppression of evidence obtained by a violation of the Fourth Amendment can only be brought by the person whose rights were violated by the search and not by one who was injured because of the damaging evidence obtained thereby. The Fourth Amendment guaranty against unreasonable search and seizure is personal. Alderman v. U. S., 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176 (1967), and State v. Engberg, 377 S.W.2d 282 (Mo.1964); State v. Thompson, 490 S.W.2d 50 (Mo.1973). In Alderman v. U. S., supra, it was said, 394 U.S. l. c. 174, 89 S.Ct. at 966:

"We adhere . . . to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. (Citing cases.) * * * There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake

when the evidence is offered against some other party. * * *

"What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion."

State v. Berstein, 372 S.W.2d 57 (Mo. 1963), cert. den. 376 U.S. 953, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964), is a case on point. In Berstein, police observed the defendant talking at his place of business with a known felon. The felon was searched and stolen goods were found in his possession. The next day, armed with the knowledge that a crime had been committed; that Berstein had been talking to the felon in whose possession stolen goods had been found, police arrested and searched Berstein without a warrant. The search disclosed some incriminating evidence in Berstein's billfold. The arrest was held to be legal as the police were found to have acted reasonably and with probable cause in making the arrest. In Berstein, the critical factors giving rise to the lawful arrest were Berstein's talking with a known felon and the finding of stolen goods in the possession of the felon.

Tindle v. U. S., 117 U.S.App.D.C. 27, 325 F.2d 223 (1963), also fits the situation of this case. In Tindle, defendant claimed that his arrest was unlawful in that it was not supported by probable cause. The defendant argued that identifying evidence should have been suppressed as the evidence obtained and appellant's arrest was fully dependent upon information obtained from another as a result of an unlawful arrest of the other person. It was conceded that the information obtained constitut-ed the probable cause for the defendant's arrest. The court stated, l. c. 224:

"In any event the fact that the information on the basis of which appellant was arrested stemmed in part from the arrest of another person which we may assume arguendo was unlawful, did not invalidate appellant's conviction. As is conceded, the total information possessed by the officer when he arrested appellant gave him probable cause to do so. . . ."

▮ So, too, do we hold that the information obtained from defendant's companion does not invalidate defendant's arrest but gave to the police officer an additional circumstance, when combined with the other circumstances, to give probable cause for defendant's arrest. The lawfulness of defendant's arrest depends upon whether the police officer at the time he placed the defendant under arrest had reasonable grounds to believe a felony had been committed and that the person arrested was the one who committed the felony. Since the defendant claimed no property interest in the items seized from his companion, he was not victimized by an illegal search—if determined to be one—of his companion. None of the defendant's Fourth Amendment rights were violated by the search of the companion. Therefore, the trial court's refusal to grant defendant's motion to suppress was not error.

▮ The defendant claims that even if the arrest were lawful, the scope of the search was too broad, in that there was no showing that the police officer had reason to believe that defendant was armed; that under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the frisk of a person is limited to a search for arms. Two recent United States Supreme Court decisions dispose of this contention. In U. S. v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and U. S. v. Gustafson, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), it was specifically held that search incident to a lawful arrest per-

mitted a full field search. In U. S. v. Robinson, *supra,* the court said, 94 S.Ct. at 476:

"The justification or reason for authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial . . . . The standards traditionally governing a search incident to a lawful arrest are not, therefore, commutted to the stricter Terry standards by the absence of probable fruits of further evidence of the particular crime for which the arrest is made . . . . The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and discover evidence, does not depend on what a court may later decide was the probablity in a particular arrest situation that weapons would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest that establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment."

The defendant's next major point is that there is insufficient evidence to support a verdict on stealing from a dwelling. We hold that there was ample evidence to support a jury verdict of guilty on the charge.

In testing the sufficiency of evidence in a criminal prosecution, the court is to consider all evidence in the light most favorable to the State. State v. Bizzle, 500 S.W.2d 259 (Mo.App.1973); State v. G'Sell, 497 S.W.2d 882 (Mo.App. 1973). Defendant was found in possession of three rings identified as property belonging to the victim shortly after the crime had been committed. The unexplained possession of recently stolen property has been sufficient to sustain a conviction of stealing. State v. Armstrong, 445 S.W.2d 367 (Mo.1969); State v. Vineyard, *supra*; State v. Freeman, 489 S.W.2d 749 (Mo.App.1973). In State v. Cobb, 444 S.W.2d 408 (Mo. banc 1969), the court held that unexplained possession does not raise a presumption of guilt but it is a circumstance from which guilt may be inferred as a matter of fact with the jury entitled to draw an inference unfavorable to the defendant. The property here was in the unexplained sole and exclusive possession of defendant and it had been recently stolen. The evidence sufficiently supports the conviction.

Defendant's reliance on State v. Delay, 455 S.W.2d 1 (Mo.1970), for the proposition that unexplained possession of stolen goods is insufficient for a jury issue on a charge of receiving stolen property is misplaced. The issue in the Delay case related to proof of guilty knowledge on a different charge than is here involved.

Defendant next contends the trial court erred in refusing his Instruction "A"[1] as a converse to the State's principal instruc-

---

1. INSTRUCTION "A"
"The mere presence of a person at the time and place of the commission of an offense is not alone sufficient to render him liable for its commission. Unless you find and believe from the evidence beyond a reasonable doubt that an offense was committed as submitted in Instruction No. ——, and that the defendant was present or near the scene of the offense, and that he knew of the unlawful purpose of the person who actually committed an offense, and that he then and there intentionally aided, abetted, assisted or encouraged such other person, you must find the defendant not guilty."

tion. The State's instruction, in pertinent part, is as follows:

"If you find and believe from the evidence beyond a reasonable doubt:

"First, that on the 29th day of December, 1971, in the City of St. Louis, Missouri, the defendant acted knowingly with another person with the common intent to commit the offense of stealing from a dwelling house, and

"Second, that while they were so acting they stole three ladies' metal rings and one ladies' wristwatch owned by Helen Brown, and

"Third, that the property taken was from a dwelling house, and

"Fourth, that the property was stolen by them with the intent to permanently deprive Helen Brown of her use of such property and to convert it or any part of it to their use, and

"Fifth, that the property was stolen by them without the consent of the owner,

then you will find the defendant guilty of stealing from a dwelling house.

"However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the foregoing, you must find the defendant not guilty of that offense."

Defendant argues that the last paragraph of the State's instruction is the precise equivalent to the "unless you so find the facts to be you will acquit defendant" language condemned in State v. Smith, 485 S.W.2d 461 (Mo.App.1972), as an unacceptable substitute for a requested converse; that when requested, a converse must be given. State v. Smith, *supra.* However, even under State v. Smith, *supra,* the defendant is required to formulate and offer a proper converse. Defendant's Instruction "A" is not an accurate converse of the principal instruction. It adds requirements and findings which are not elements of the charged offense. The trial

court, therefore, properly refused defendant's Instruction "A" as not being a true converse, and the principal instruction in the absence of the offer of an accurate converse was proper. State v. Caldwell, 423 S.W.2d 738 (Mo.1968); State v. Orr, 493 S.W.2d 374 (Mo.App.1973).

The final point which defendant makes is that the State was erroneously allowed to amend its information from a charge of stealing over $50.00 to a charge of stealing from a dwelling house without giving defendant a preliminary hearing. Although defendant has failed to preserve this point by raising it for the first time in his brief, contrary to the provisions of Rules 27.19 and 27.20 V.A.M.R., we shall address ourselves to the substance of his point. The question of permitting an amendment rests in the sound discretion of the trial court, and where the amendment does not change the crime charged against defendant, there is no abuse of that discretion. State v. Huffer, 424 S.W.2d 776 (Mo.App.1968). The amended information charged defendant with stealing from a dwelling house. Here, defendant was on notice that he was charged with stealing property from Ms. Brown on December 29, 1971, contrary to § 560.156 RSMo 1969, V. A.M.S. The essence of the violation of § 560.156 is stealing, and defendant is not in a position to argue that he is deprived of knowledge of the crime upon which he was to be tried. Questions as to the methods of stealing go only to the punishment as outlined in Subsection 2 of § 560.161. Therefore, the use of the amended information cannot be said to be an abuse of discretion, as it did not allege an offense different from that alleged in the original information. In State v. McCarthy, 336 S.W.2d 411 (Mo.1960), it was said, 1. c. 418:

"The offense of 'stealing' with which defendant was charged in the information is the offense of which defendant was found guilty. The offense does not have different degrees, but different penalties

dependent upon the value or kind of property stolen."

The charge was not materially changed against defendant. The amendment was not an abuse of discretion, since the defendant was not precluded from asserting any defense he may have had prior to the amendment nor was there any prejudice of his substantial rights of prejudicial surprise. State v. West, 484 S.W.2d 191 (Mo.1972).

■ The amendment invoking the second offender act likewise did not charge an offense different from that originally charged, and there was no showing of any prejudice to defendant or abuse of discretion of the trial court in allowing the amendment. State v. Lockhart, 501 S.W.2d 163 (Mo.1973).

The judgment is affirmed.

SMITH, P. J., concurs.

McMILLIAN, J., dissents.

McMILLIAN, Judge.

I respectfully dissent.

It is my firm opinion that there was no probable cause for defendant's arrest and that the search of his person conducted immediately subsequent to the unlawful arrest violated defendant's constitutional right under the Fourth Amendment to the United States Constitution and Article I, § 15 of the Missouri Constitution to be free from unreasonable searches and seizures. Consequently, the trial court should have granted defendant's motion to suppress the evidence obtained as a result of the unlawful arrest, search and seizure. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Subject to certain exceptions, a search of a person, place or object protected by the Fourth Amendment is valid only if authorized by a valid search warrant. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). The state claims that the search of defendant's person was valid as a search incident to a lawful arrest. Searches incident to valid arrest comprise a well-recognized exception to the warrant requirement. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925) and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

The other clearly defined exceptions do not apply to the fact situation of this case. There was no evidence in plain view of the officer which would justify a warrantless search as in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). There was no "hot pursuit" or danger to life as in Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Nor was the search a "protective search" for weapons based upon less than probable cause to arrest under the "stop and frisk" doctrine of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The arresting officer testified that he had no reason to believe that either subject was armed. The state does not claim that the search fell within any of the above-mentioned exceptions. In order for the search to have been valid, it must have been conducted incident to a lawful arrest based on probable cause. State v. Novak, 428 S.W.2d 585, 591 (Mo.1968). "It is the fact of the lawful arrest which establishes the authority to search." United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973); Kansas City v. Butters, 507 S.W.2d 49, 53 (Mo.App.1974). Consequently, the constitutional validity of the search in this case depends upon the constitutional validity of defendant's arrest and whether or not, at the moment the arrest was made, the officer had probable cause to make it.

Judicial determination of the constitutionality of an arrest, search and seizure

necessarily turns on the "concrete factual context of the individual case." Sibron v. New York, 392 U.S. 40, 59, 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917 (1968) and Kansas City v. Butters, *supra*, 507 S.W.2d at 51. "A common temptation in resolving 'search and seizure' cases . . . is to engage in doctrinaire statements of law with, at best, only a superficial analysis of the underlying facts." Kansas City v. Butters, *supra*, at 51. It is my opinion that the majority bases its finding of probable cause on a superficial analysis of the concrete facts of the case.

I would add the following to the majority's statement of the facts. The majority states that at the time of the arrest, Officer Atwood knew that a felony had been committed "as recently as little more than an hour before his investigation of the crime." There is absolutely no evidence in the record to support such an inference. The victim of the burglary, Helen Brown, testified that she left the apartment for work at 7:30 A.M., and returned at 8:45 P.M. to find that her residence had been burglarized. The burglary could just as well have occurred as much as twelve hours before the officer's investigation of the crime. While it is true that defendant and his companion were stopped within a few feet of the burglarized apartment, Officer Atwood testified that his investigation later substantiated their explanation that they had been visiting a friend's apartment on the same floor and were in the process of leaving the building. When Officer Atwood observed them walking in the hallway, they were *not* walking away from Mrs. Brown's apartment; they were walking away from their friend's apartment down the hall. The officer offered no other reason to suspect defendant of the commission of the crime other than his association with Marshall, whom he recognized. The officer did not observe any suspicious conduct on the part of defendant, nor did he recognize defendant to be a troublemaker or felon. These additional facts render the majority's finding of probable cause less justifiable.

The substance of all definitions of probable cause is a reasonable ground for belief of guilt. Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed. Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Maxwell, 502 S.W.2d 382, 386 (Mo.App. 1974).

The courts have excluded certain elements from the definition of probable cause. Good faith on the part of the arresting officer is not enough. Beck v. Ohio, *supra*, 379 U.S. at 97, 85 S.Ct. 223. In *Beck*, the Supreme Court failed to find probable cause for an arrest which was made "in good faith" and on the basis of the officer's knowledge of Beck's physical appearance and previous arrest record.

Nor is mere suspicion enough to support a warrantless arrest based on probable cause. "Common rumor or report, suspicion, or even 'strong reason to suspect' was not adequate to support a warrant for arrest." Henry v. United States, 361 U.S. 98, 101, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959). In Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), the Supreme Court declined to find probable cause in the vague realm of suspicion. "A presumption that people who might walk or loaf or loiter . . . or who look suspicious to the police are to become future criminals is too precarious for a rule of law." Papachristou v. City of Jacksonville, *supra*, at 171, 92 S.Ct. at 848. Likewise, a presumption that the companion of one who is recognized by the arresting officer and who may have committed a crime as much as twelve hours earlier is also guilty of the particular offense is a presumption which enlarges

the bounds of probable cause beyond the limits of reasonableness.

The United States Supreme Court, as well as federal and state courts have manifested a general reluctance to impute guilt to the defendant from the company in which he was observed. In United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L. Ed. 210 (1948), the officer was informed by R that he was going to buy counterfeit ration coupons from B. The officer followed B and observed him enter the defendant's car. The officer went to the vehicle and found R in the back seat holding two counterfeit ration coupons. The defendant, Di Re, was seated by B on the front seat. R told the officer he had received the coupons from B. All three were arrested without a warrant and taken into custody. The decision turned upon whether there was probable cause to arrest Di Re. The government claimed that the search of Di Re (which yielded counterfeit coupons) was incident to his lawful arrest although it was conceded that at the time of the arrest the officers had no information implicating Di Re and no information pointing to possession of any coupons, unless his presence in the car warranted that inference. The court stated: "The argument that one who 'accompanies a criminal to a crime rendezvous' cannot be assumed to be a bystander . . . is farfetched when the meeting is not secretive . . . but in broad daylight, in plain sight of passers-by . . ." 332 U.S. at 593, 68 S.Ct. at 228. The fact situation of Di Re parallels that of the case before us. As in Di Re, defendant's arrest was based upon the fact that he was present near the scene of the crime (even though his presence was not contemporaneous with the commission of the crime as in Di Re) and in the company of an individual, Marshall, who the police *may have* had reason to suspect of having committed a felony. In Di Re there was no question regarding the existence of probable cause to arrest Di Re's companion. Here, there was no finding or claim that the police even had probable cause to arrest defendant's companion.

The defendant and his companion were not being secretive, or hiding from passers-by. Certainly, there was less probable cause to arrest defendant than there was to arrest Di Re. The majority lists the following facts as justification for their finding of probable cause: "a crime had been recently committed, the defendant was at the scene of the crime and in association with one who had in his possession fruits of the crime." The Supreme Court in Di Re did not find such circumstances sufficient to support a finding of probable cause. In holding defendant's arrest to be valid, the majority has effectively ignored the Di Re standard for probable cause.

The Eighth Circuit has also held that mere association with a suspected criminal is insufficient information upon which to base a warrantless arrest. In United States v. Bazinet, 462 F.2d 982 (8th Cir. 1972), the officer had no information to connect Bazinet with the commission of any crime, but arrested him because of his presence in the car with A, who was carrying in a concealed fashion, items suggestive of criminal activity on A's part, and also the fact that the accompanying officer recognized Bazinet as a convicted felon. The court held such information to be insufficient to support a finding of probable cause. United States v. Bazinet, *supra*, at 989.

In State v. Seymour, 438 S.W.2d 161, 163 (Mo.1969), the Missouri Supreme Court held that "the fact of association is not, in and of itself, reasonable grounds for arrest." The police had probable cause to suspect Seymour's companion of a burglary committed earlier, but the court found that the basis for Seymour's arrest was necessarily his association with the companion at a time too far from the time of the offense to warrant the inference that they were together in the commission of the burglary. 438 S.W.2d at 163. Here, the defendant was seen in the presence of his companion at a time at least one hour and possibly as much as twelve hours subsequent to the commission of the

crime. To distinguish Seymour, the majority erroneously relies on the dubious inference that defendant's arrest was proximate in time to the commission of the burglary. However, as stated previously, the evidence does not support such an inference.

The majority cites State v. Berstein, 372 S.W.2d 57 (Mo.1963) for the proposition that association with a known felon and the finding of stolen goods in possession of the felon are sufficient circumstances to support a finding of probable cause. However, the Missouri Supreme Court's standard for probable cause as applied to the facts in *Berstein* was subsequently held invalid in White v. Swenson, 301 F.Supp. 447, 462–463 (W.D.Mo.1969). The court in *Berstein* had applied the following standard in holding that the officer had probable cause to arrest without a warrant: "The officer must not act arbitrarily, but must exercise his discretion in a legal manner, using all reasonable means to prevent mistakes [and] . . . must be actuated by such motives as would influence a reasonable man acting in good faith." State v. Berstein, *supra*, 372 S.W. 2d at 59. This language was held to be inconsistent with controlling federal standards in White v. Swenson, *supra*, 301 F. Supp. at 462–463. In State v. Seymour, *supra*, 438 S.W.2d at 163, the Missouri Supreme Court also invalidated the standard for probable cause used in *Berstein*. Consequently, it is gross error for the court to rely on the *Berstein* case as precedent for a holding that the fact situation of this case, similar to that in *Berstein,* supports finding of probable cause.

Likewise, the majority's reliance on Tindle v. United States, 117 U.S.App.D.C. 27, 325 F.2d 223 (1963) is also questionable. First, *Tindle* was decided prior to the handing down of Beck v. Ohio, *supra*, in which the Supreme Court sharpened the standards for probable cause in warrantless arrest. Second, the short opinion in Tindle is totally void of any statement of facts, a necessary element of any judicial determination in the area of search and seizure. Beck v. Ohio, *supra*, 379 U.S. at 96, 85 S. Ct. 223. Third, the court stated that the information on the basis of which Tindle was arrested stemmed *in part* from the arrest of another person which was assumed to be unlawful. 325 F.2d at 224. We are not told what other information the officer possessed when he arrested Tindle. Assuming *arguendo* that association with a suspected guilty party may be one circumstance which, *when combined with others*, may constitute probable cause for arrest, the "other circumstances" must have some nexus with the defendant's own conduct. Otherwise, the justification for arrest boils down to mere association. In this case, there is no nexus between the fruits of the search of defendant's companion and defendant's own conduct. The majority erroneously assumes that the information obtained from defendant's companion provides the requisite "additional circumstance" to give probable cause for defendant's arrest. However, *but for* defendant's *association with Marshall, this information* was of no value to the officer as a basis for defendant's warrantless arrest. There was nothing intrinsically suspicious in the activities of defendant; no furtive movements, no suggestion of flight. In order for this court to find probable cause for defendant's arrest, there must have been some other information in the officer's possession *pertaining to defendant* other than his association with Marshall.

An important limitation on the officer's discretion *is that the requirements of probable cause for warrantless arrests cannot be less stringent than where an arrest warrant is obtained. Otherwise, a principle incentive now existing for the procurement of an arrest warrant would be destroyed. Wong Sun v. United States, 371 U.S. 471, 479–480, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). A warrantless arrest bypasses the safeguards provided by an objective predetermination of probable cause and substitutes instead the far less reliable procedure

of an after-the-event justification for the arrest or search too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. Beck v. Ohio, *supra*, 379 U.S. at 96, 85 S.Ct. 223. Had Officer Atwood taken the quantum of information on Drake (which he possessed immediately prior to the arrest) to a neutral and detached magistrate, it is doubtful that an arrest warrant would have issued.

Here, as in many search and seizure cases, we meet the argument that if such arrests and searches cannot be made, law enforcement will be severely restricted. But our forefathers "after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." United States v. Di Re, *supra*, 332 U.S. at 595, 68 S.Ct. at 229. It is not within this court's discretion to expand the standards of judicial determination of probable cause. In expanding the permissible scope of searches incident to lawful arrests, (United States v. Robinson, *supra*; Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973)) the Supreme Court heavily relied on the existence of probable cause to arrest as justification for its holding. Consequently, this court has a special duty to stay within the acceptable bounds of Beck v. Ohio, *supra*, in determining the existence or nonexistence of probable cause to arrest. Resolution of the constitutionality of the officer's arrest should be separated from the resolution of defendant's innocence or guilt.

For these reasons, I believe that the warrantless search of defendant, not conducted incident to a lawful arrest based on probable cause, was unreasonable and that the evidence seized as a result of the search should have been suppressed. Since the state cannot make a case without such evidence, the judgment should be reversed and the defendant discharged.