STATE of Missouri, Plaintiff-Respondent,

v.

**Michael James SANDERS, Defendant-Appellant.**

No. 35734.

Missouri Court of Appeals, St. Louis District, Division Two.

Dec. 2, 1975.

---

Charles D. Kitchin, Public Defender, James C. Jones, St. Louis, Christelle Adelman-Adler, Asst. Public Defender, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., John D. Chancellor, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Michael James Sanders, defendant-appellant (hereinafter defendant) presents this appeal from a finding and judgment of the trial court in a jury-waived trial that he was guilty of carrying a concealed weapon, § 564.610 RSMo.1969, and imposition of sentence of three years in the custody of the Missouri Department of Corrections. We affirm.

Defendant's sole contention on appeal is that the weapon in question was seized from his person as a result of an illegal search and that the trial court erred in failing to sustain his motion to suppress the gun on those grounds.

Prior to the commencement of trial on June 5, 1973, defendant filed a memorandum waiving his right to jury trial and requested a jury-waived trial. Both sides announced ready for trial and defense counsel requested that the case be heard subject to an oral motion to suppress the evidence "as unconstitutionally seized" and advised the trial court that he would supply the court with a "typed motion to suppress." The trial court advised counsel to make his objection when the evidence was offered. The trial was commenced and since the defendant does not challenge the sufficiency of the evidence to support a conviction we set out a short statement of the facts adduced by the State's evidence.

The State's evidence was that on the early morning of December 23, 1972, the St. Louis Police Department received a report that a suspicious person was in a Chinese restaurant located at 5514 Martin Luther King Drive in the City of St. Louis. Two police officers responded to the report and when they arrived on the scene they were met by an employee of the restaurant, one Anthony Woods, and a security guard, Walter Walker, on the sidewalk in front of the restaurant. These men informed the police officers that they had observed a man "hanging around" inside the restaurant for about an hour and that they had observed a chrome-plated revolver under this man's coat. The two men pointed out the man, who was still in the restaurant, and the officers approached and advised him to put his hands in the air and face the wall. While the man stood in this position the two officers observed a chrome-plated revolver in a shoulder holster the man was wearing under his jacket. One of the police officers, Officer Hagedorn, reached under the man's jacket and removed a .38 Smith & Wesson revolver, fully loaded, from the shoulder holster and thereupon placed the man under arrest for carrying a concealed weapon. Defendant was the man.

It was admitted by both officers who testified that the defendant was searched prior to the time he was placed under arrest and the reason he was searched was the information furnished them by the two employees of the restaurant that the defendant had a gun on his person concealed from view. When the State offered into evidence the gun, shells and shoulder holster, defendant's counsel objected to their receipt in evidence on the grounds that the defendant's constitutional rights had been violated. The thrust of defendant's argument was that the search preceded the arrest and was therefore unreasonable. Defendant offered no evidence. The trial court took both the motion and the cause under submission, and without specifically ruling on defendant's motion, found him guilty as charged of carrying a concealed weapon and assessed his punishment at three years in the custody of the Missouri Department of Corrections. Defendant's counsel never filed the "typed motion to suppress" he had stated he would, but he did file a timely

motion for new trial which was overruled, and the defendant was sentenced in accordance with the assessment of punishment previously announced by the trial court. This appeal followed.

In the brief filed in this court defendant in his Points Relied On presents the question of the reasonableness of the search and seizure on federal constitutional grounds only, i. e., that his Fourth Amendment rights were violated. The thrust of his argument is that the police officers had no search warrant and the facts of this case do not bring it within the exception carved out in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); that therefore the search and seizure was illegal, his motion to suppress should have been sustained by the trial court, and the weapon seized from his person excluded from evidence at trial. He asks that we reverse his conviction and order him discharged.

The State relies on the same authorities cited by the defendant and argues that the facts of this case bring it within the holdings of both *Terry* and *Adams,* supra.

The holding of the Supreme Court in *Terry v. Ohio,* supra, was that a police officer who observes unusual conduct which leads him to reasonably conclude in the light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be *armed and presently dangerous,* and who, in the course of investigating this behavior identifies himself as a police officer and makes reasonable inquiries, and there is nothing in the initial stages of the encounter to dispel his reasonable fear for his own or others' safety, is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. A search under those circumstances was held to be a reasonable search under the Fourth Amendment, and any weapons seized held properly introduced into evidence against the person from whom the weapons were taken. The Court there refused to justify the search and seizure on the basis of "stop and frisk" theories, but did decide the case on the question whether, at that point, the police officer conducting the search had available at the moment of the seizure or the search "facts" which would warrant a man of reasonable caution in the belief that the action taken was appropriate. The case was decided on the need for a law enforcement officer to protect himself and other prospective victims of violence in situations where there may be a lack of probable cause for the arrest. The court, 392 U.S., l.c. 24, 88 S.Ct. at 1881, said:

> "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

The search in such circumstances is not an unbridled one, but has its limitations. As the court in *Terry* stated, it is limited to a search which is necessary for the discovery of weapons which might be used to harm the officer or others nearby and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.

*Adams v. Williams,* supra, was a search and seizure prior to arrest made by a Bridgeport, Connecticut police officer who, while alone on patrol in a high crime area of that city at 2:15 a. m. was informed that Williams was seated in a nearby vehicle carrying narcotics and with a gun at his waist. The police officer went to the scene and approached the vehicle to investigate the informant's report. He tapped on the car window and asked the occupant to open the door. Williams was the occupant and instead of opening the door, lowered the

window in the car door. The police officer reached into the car and removed a fully loaded revolver from Williams' waistband, precisely in the place indicated by the informant. Williams was then placed under arrest and a search of both his person and the car followed bringing to light some heroin on Williams' person and in the car, along with a machete and another revolver. Seizure of the gun from Williams' waistband was held not an unreasonable search and seizure violative of his Fourth Amendment rights because it came within the limitations set out in *Terry* as a weapon search for the protection of the life of the officer.

One problem confronting the Adams court was that citizens of the State of Connecticut are permitted to carry weapons, concealed or otherwise, at will so long as they possess a permit. Conn.Gen.Stat.Rev. §§ 29–35, 29–38. The legislature of this State has outlawed the carrying of a concealed weapon on or about the person, § 564.610 RSMo.1969. Our Supreme Court has held that where a report was received by a police officer over a radio from a police dispatcher than one hour previously a bus driver had seen the occupants of a blue-painted Volkswagen, bearing a specified license number, flourishing a weapon at a place in the immediate vicinity of where the arrest was subsequently affected, constituted probable cause for the arresting officer who had heard the radio dispatch to make an arrest on the grounds that one or more of the occupants of the car had committed or were committing an offense and to conduct a search of the person of the defendant and her purse wherein was found the weapon forming the basis for the concealed weapons charge of which she was convicted. *State v. Perry,* Mo., 499 S.W.2d 473, 475[4] (1973). Under the holding in *Perry* the police officers here had even stronger bases for reason to believe the defendant was committing a crime, was armed and dangerous. Two persons who actually saw the defendant with a weapon concealed under his coat and who were employees of the restaurant where he was "hanging around"

had notified the St. Louis Metropolitan Police Department that a "suspicious person" was in the restaurant. A radio dispatch was put out over the air directing the arresting officers to the scene, and upon their arrival they found the two employees standing on the sidewalk in front of the restaurant. And they again reported to the officers what they had seen. The defendant was pointed out to the police officers who thereupon entered the restaurant and proceeded to disarm the defendant. We conclude that this was a proper exercise of the rights to protection afforded police officers in the course of investigations by *Terry* and *Adams,* and the search and seizure of the gun, bullets and shoulder holster here was not violative of defendant's Fourth Amendment rights.

We have examined those portions of the record as required by Rule 28.02 and find them to be sufficient.

The conviction of defendant is affirmed.

CLEMENS, P. J., and STEWART, J., concur.