**KANSAS CITY,** *Plaintiff-Respondent,*

v.

Katherine **MATHIS,** Defendant-Appellant.

No. 24434.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1966.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

Herbert C. Hoffman, City Counselor, George L. DeBitetto, Assistant City Counselor, Kansas City, for respondent.

CROSS, Presiding Judge.

Although this appeal is docketed as a single cause, it includes three separate actions tried to final judgment, to-wit, cases numbered 5257, 5417 and 5418 in the Circuit Court of Jackson County, Missouri. All three cases were originally filed in municipal court by the City of Kansas City, Missouri, as plaintiff, against Katherine Mathis as defendant, and are in the nature of prosecutions for alleged violations of municipal ordinances. Defendant was con-

victed in municipal court in all three cases and duly appealed to the circuit court.

In case No. 5257 defendant was charged with vagrancy by information filed pursuant to her arrest on March 4, 1965. A subsequent arrest on March 15, 1965, gave rise to cases No. 5417 and No. 5418 in which she was charged, respectively, with disorderly conduct and resisting arrest. Case No. 5257 was tried as a separate action and the appeal issues arising from it will be separately discussed and determined. Cases No. 5417 and 5418 were tried simultaneously on the same evidence and will be considered together.

\* \* \*

*CASE NO. 5257:* The information filed in municipal court on behalf of the city charged that on or about the 4th day of March, A.D., 1965, one Katherine Mathis "was a prostitute, and a lewd woman, had no visible means of support and was found loitering about the streets or frequenting saloons" in violation of Section 62.050 of the Revised Ordinances, 1956, of Kansas City, Missouri. Following defendant's conviction in municipal court and her subsequent appeal to the circuit court, the cause was tried to that court without a jury. The only witness in the case was Oliver Wallen, a police vice squad detective. He testified for the city that he arrested defendant on March 4, 1965, "as a known prostitute", after observing her standing at the front window of the Gray Room Lounge, located in the Street Hotel. She was taken into custody in the restaurant, adjoining the lounge at approximately the hour of midnight.

When arrested, defendant told the officer she was working in the cafe as a waitress. She had previously told Wallen that was her occupation. Wallen stated that he had investigated at various hours of the day and night but he had never seen her in uniform or waiting tables or working otherwise. He made no inquiry of the restaurant manager as to whether defendant worked there. Wallen further stated,

"I had never seen her work up until then (the time of her arrest). I have seen her working since; however, she doesn't wear a uniform like the rest of the waitresses. She is dressed up in a nice dress just the same as she did before. She doesn't wear a uniform like the rest of them". Wallen didn't remember whether she had any money on her when he arrested her. Defendant had a room available to her in the Street Hotel which she occupied part of the time.

The trial court found defendant guilty of vagrancy and sentenced her "to 120 days or a fine of $200.00". Formal judgment was entered accordingly and defendant appealed.

■ Defendant challenges the sufficiency of the evidence to support the judgment of conviction and specially contends there was no substantial evidence to establish the essential element of the charge that she had no visible means of support. These questions will be resolved under legal principles and procedural rules applicable in criminal cases. Section 98.020 V.A.M.S. provides that "[a]ppeals from police courts and for violation of an ordinance of a city, town or village shall be in the nature of a criminal appeal from a magistrate." The Supreme Court construes this statute to mean that "appeals from judgments of the municipal courts in prosecutions for the violation of ordinances, (are) to be tried in accordance with the Criminal and not the Civil Code", City of Milan v. Allen, Mo. Sup., 175 S.W. 933; and that "the accused is clothed with the presumption of innocence; that he can be convicted only upon proof of guilt beyond a reasonable doubt, and upon the unanimous verdict of a jury." King City v. Duncan, 238 Mo. 513, 142 S.W. 246. Also see City of Clayton v. Nemours, 237 Mo.App. 167, 164 S.W.2d 935. Consequently the city had the burden of proving "every element of the offense charged and defendant's guilt thereof beyond a reasonable doubt throughout the trial." State v. Fitch, Mo.App., 162 S.W.

2d 327; State v. Williamson, 339 Mo. 1038, 99 S.W.2d 76.

In this case one of the essential elements of the offense of vagrancy, as it is defined by the city's ordinance and charged against defendant by the information, is that she had "no visible means of support." In undertaking to establish that defendant had no visible means of support the city made no claim that she was without funds or property, but relied solely upon the proposition that she was unemployed. The only evidence adduced by the city on that issue was the testimony of Wallen, who stated *negatively* that he "had never seen her in the cafe in uniform or waiting tables" or doing "any manner of work".

■ On the other hand, Wallen's testimony is the fountain source of *positive* evidence on defendant's behalf tending to establish that she was in fact employed at and prior to the time of her arrest. He testified that when he arrested defendant he asked her if she was employed and that she told him "she worked in the cafe as a waitress". Although the quoted statement thus attributed to defendant enters the record as an admission by the city's witness, and as hearsay testimony volunteered by him to which no objection was interposed, it nevertheless stands as evidence in the case. 27 Mo.Digest Trial ■ Its credibility and probative value were factors to be determined by the trier of the facts under appropriate rules of evidence. Wallen's testimony additionally establishes facts and circumstances tending to corroborate defendant's affirmative declaration that she was employed as a waitress. Notwithstanding defendant admittedly so informed the officer, he "didn't bother to check with the management". It is further admitted by Wallen that since March 4, 1965, he has "observed her in there working * * * however, she doesn't wear a uniform like the rest of the waitresses. She is dressed up in a nice dress just the same as she did before. She doesn't wear a uniform like the rest of them". These facts reasonably

permit inference that when Wallen observed defendant at the hotel prior to arresting her, he erroneously formed the belief she was unemployed because she was not attired in the same garmenture worn by other waitresses in the establishment.

 However, the real infirmity of Wallen's testimony, it being negative in nature, is its lack of the requisite evidentiary foundation to show that the witness had sufficient opportunity to observe whether or not plaintiff was in fact employed. The probative value of negative testimony rises or declines according to "the opportunity of the witness giving it to hear and observe". 20 Am.Jur., Evidence, Sec. 1187, p. 1039. Also see Williamson v. Wabash R. Co., 139 Mo.App. 481, 122 S.W. 1113; Lafferty v. Wattle, Mo.App., 349 S.W.2d 519. "The mere fact that a witness did not hear or see something, standing alone, ordinarily has no probative value as to the occurrence, or non-occurrence, of the event, and it may acquire such value only when coupled with a predicate to establish that the witness was in a position to have heard or seen the occurrence if it had happened." 32A C.J.S. Evidence § 1037, p. 719, citing Finley v. Illinois Central R. Co., Mo. App., 251 S.W.2d 713. The foregoing principles were observed by the Court of Appeals of Georgia, in Jacobs v. State, 1 Ga. App. 519, 57 S.E. 1063, as the basis for its reversal of a judgment of conviction in a prosecution for vagrancy. The court there said: "It appears from the evidence that one of the witnesses for the state did not see the defendant work; but this purely negative evidence is all that the state produced. * * * The most the witness was able to testify was that he had seen the defendant at times when he was not at work. That positive evidence is to be preferred to negative is an elementary rule of evidence, binding upon juries, but absolutely disregarded in this case. If the allegations were sustained by some proof (however little), we would not disturb the verdict; but material allegations made by

the state must be proved in the prosecutions of vagrancy as in other cases".

 So it is in this case. According to the officer's testimony his opportunity to observe defendant at work was limited to those occasions on which he "made special effort both day and night at various hours to check and see if she worked there". The witness did not see fit to state with any particularity the frequency of his "checks" or the duration of his surveillance. In view of the vagueness and indefiniteness of the officer's testimony on these attributes of his "investigation" we do not believe it has been established that he had sufficient opportunity of observation to render his testimony of substantial evidentiary value. Having in mind the positive testimony of defendant that she worked in the cafe, we further believe that she could reasonably have been engaged in such employment without having been so observed by the officer. "The probative force of negative evidence is reduced to absolute zero where the fact might reasonably have occurred without being observed by, or known to, the witness * * *." 32A C.J.S. Evidence § 1037, p. 720.

 It is our conclusion that the city has not discharged its burden of proof to establish beyond a reasonable doubt, as an essential element of the case, that defendant was without visible means of support. Therefore, the judgment can not stand and the conviction must be set aside. Other grounds of error are presented by defendant, which, in view of our ruling above, need not be considered or ruled.

\* \* \*

*CASES NOS. 5417 and 5418:* The city's information filed in municipal court to initiate Case No. 5417 charged (formal prefatory allegations omitted): "* * * that on or about the 15th day of March A.D. 1965, within the corporate limits of Kansas City, and in and upon 1510 E. 18th one Katherine Mathis·*and* then and there unlawfully did use loud, boisterous, offensive,

threatening, abusive and profane conduct, language and behavior * * * in violation of Section 39.120(1) * * * of the 1956 Revised Ordinances of Kansas City, Missouri, as amended" (sic).

The information filed in Case No. 5418 alleged that on or about the 15th day of March, 1965, and within the corporate limits of the city, defendant "unlawfully did resist arrest by a police officer in the discharge of his official duty", in violation of Section 39.530 of the city's Revised Ordinances of 1956, entitled "Obstructing and Resisting Officer or Inspector".

Trial of both cases in municipal court resulted in judgments of conviction from which defendant appealed to the circuit court. There the causes were tried simultaneously to the court, de novo and without a jury, and on evidence common to both actions, to-wit, the testimony of the city's witness, Earl King, who identified himself as a detective assigned to the vice unit of the city's police department. No other witness testified in the case.

Detective King testified he arrested defendant at approximately 9:55 P.M. on March 15, 1965, at the Street Hotel after observing her at the rear of the cocktail lounge walking toward the door of the restaurant adjoining. He stated he recognized her "as a person with a reputation of being a prostitute that he had previously arrested." The arrest was made on the premises of the restaurant into which she ran after she saw the officer. As the officer was escorting her to the police car defendant "broke away and ran". King pursued and caught her, at which time she started "screaming, cussing and fighting with me, resisting arrest". With assistance from a companion officer, King handcuffed her and put her into the police car and started toward police headquarters. She was crying and asked the officers "Why are you guys always arresting me every time you see me?" After the car had gone a short distance, defendant said she had lost her wig and considerable money at the place where King had caught her. Preparing to return there, the officers stopped the police car. At that time another car occupied by a man and woman also stopped and one of the occupants inquired what was going on and what the disturbance was. After the police officers identified themselves "this person" went on and the police car was driven to the location of defendant's loss. The officers were unable to find the wig but did find two ten-dollar bills lying on the sidewalk which they gave to defendant. They then took her to headquarters where she was booked. Upon being questioned, she stated she was a waitress at the restaurant.

Officer King additionally testified that prior to March 15th he had arrested defendant every time he saw her "around there" (meaning the Street Hotel) because she apparently was not working and was either in the bar or on the street waving at cars. The witness admitted that he has seen defendant apparently working in the Street Hotel since the March 15th arrest. At the time of defendant's arrest the officer did not see her with a man and did not see her drinking anything. She was "just walking". The officer stated his reason for arresting defendant as follows:

"Q. (By counsel for defendant) And that is what you placed her under arrest for initially because you had observed her in the cocktail lounge?

"A. Because we arrested her before and we had warned her in regards to loitering in this bar in this location and she ran as soon as she saw us. When we first observed her she was walking at the rear of the cocktail lounge. When she saw us she ran back to the restaurant, through the kitchen and hid in the men's rest room. This is why I placed her under arrest.

"Q. You arrested her because you had previously warned her not to go into that cocktail lounge, is that correct?

"A. Because I had warned her—because I had arrested her, and because I recognized her and because she ran.

"Q. That was the reason that you placed her under arrest?

"A. That is correct.

"Q. You didn't have a warrant for her arrest?

"A. No, sir.

"Q. You did not observe her committing any felony, she wasn't holding anybody up, committing rape, shooting anyone, anything like that?

"A. No.

"Q. All she was doing was in a cocktail lounge where you had personally warned her not to go, is that correct?

"A. That is correct."

At the conclusion of detective King's testimony defendant's counsel moved for dismissal of both cases. After brief arguments by respective counsel the trial court expressed doubt that there was probable cause for arrest, by the following quoted remarks:

"THE COURT: He didn't say he was arresting her for soliciting or vagrancy or loitering. He said he arrested her because he warned her to stay out of there and she was there. * * *

"I think the ordinance covers persons as the evidence has been here, where known prostitutes are loitering for purposes rather obvious, but the problem in my mind here is, the officer didn't arrest her for any violation".

At this point counsel for the city stated to the court: "The officer informs me she originally was booked under vagrancy". It is reasonably apparent that the trial court accepted this unsworn statement as evidence and was strongly influenced by it to believe the officer had in fact arrested defendant for vagrancy. This is shown by the

following quoted remarks of the court, in response to counsel's statement:

"THE COURT: If she was arrested for vagrancy, then it would have been a lawful arrest. There is probably cause to believe she was a vagrant and under the circumstances I think she was, and then the arrest would have been lawful, and if she did resist arrest she is subject to the charge. I will overrule your motion under those circumstances."

The court then proceeded to announce findings that defendant's arrest was lawful, that "she broke away and ran" and that "she was using profane language". Upon that basis the court found defendant guilty both of resisting arrest and disorderly conduct as charged, and entered judgments of conviction imposing a fine of $25.00 in each of the two cases.

■ As her first point defendant submits that she is not guilty of resisting arrest as charged in case No. 5418 for the reason her arrest was unlawful. This contention is premised on sound legal doctrine. "Any unlawful interference with the fundamental right of personal liberty may be resisted. Accordingly, every person has a right to resist an unlawful arrest." 5 Am. Jur.2d, Sec. 94, Arrest, p. 778. "Where the arrest is unlawful, defendant had the right to use such force as was reasonably necessary to prevent it." City of St. Louis, v. Penrod, Mo.App., 332 S.W.2d 34. Also see, State v. McGehee, 308 Mo. 560, 274 S. W. 70.[1] There is no evidence in this case, nor is it contended by the city, that defendant used more force than necessary in resisting the arrest.

■■ It is elementary that under certain circumstances a peace officer may make a lawful arrest without a warrant. The general rule, originating in the common law, is that he may arrest without a warrant any person whom he has reason-

1. For a comprehensive discussion of the law or arrest, see University of Kansas City Law Review, Vol. 29, 1961, p. 117, "Arrest in Missouri", by John Scurlock, Professor of Law, University of Missouri at Kansas City.

able cause to believe has committed a felony and any one committing a misdemeanor in his presence. State v. Vollmar, Mo.Sup., 389 S.W.2d 20; State v. Berstein, Mo. Sup., 372 S.W.2d 57; State v. McBride, 327 Mo. 184, 37 S.W.2d 423. And, this rule has been liberalized by Sections 84.440 and 84.-710, RSMo1959, V.A.M.S. in that police officers of Kansas City, Missouri, are thereby authorized to arrest without a warrant any person whom they have reasonable ground to believe has committed either a felony or misdemeanor or has violated any ordinance of the city, even though such an offense does not occur in the presence of the officer. State v. Cantrell, Mo.Sup., 310 S.W.2d 866; Greaves v. Kansas City Junior Orpheum Co., 229 Mo.App. 663, 80 S.W.2d 228. Thus officer King was amply clothed with authority to arrest defendant on the occasion in question if reasonable ground existed for him to believe she had committed or was in the commission of a criminal offense in violation of state law or an ordinance violation. It is not contended by the city that the offense for which she was arrested was other than a misdemeanor defined by municipal ordinance or that she had previously committed such an offense out of the officer's presence.

■ It is clear that our view of the legality of defendant's arrest necessarily rests upon the question whether officer King had reasonable grounds to believe defendant had committed some offense in violation of the city's ordinances. As to what constitutes reasonable grounds for an arrest without a warrant, the following was stated by the Supreme Court in State v. Jefferson, 391 S.W.2d 885: "What constitutes reasonable grounds to believe that an offense has been committed by the person arrested is incapable of an exact definition beyond saying that the officer must not act arbitrarily, must exercise his discretion in a legal manner, must use all reasonable means to prevent mistakes and must be actuated by such motives as would influence a reasonable man acting in good faith. State v. Cantrell, Mo., 310 S.W.2d 866, 869[6];

Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 225[2, 3], 228[10]; 13 L.Ed.2d 142. See generally 6 C.J.S. Arrest § 6d(1), p. 596". See also State v. Berstein, 372 S.W. 2d 57.

■ Review of officer King's testimony reveals no evidentiary circumstances of substantial weight tending to establish that he had reasonable ground to believe defendant had committed a crime or violated an ordinance of the city. In fact his testimony, from which we have previously quoted verbatim, expresses reasons for defendant's arrest founded on considerations other than the belief that she had violated an ordinance. In essence, the reasons given by King for defendant's arrest, four in number, are (1) because he had warned her not to go into the cocktail lounge, (2) because he had previously arrested her, (3) because he recognized her, and (4) because she ran. The officer's testimony is void of any claim or statement that he arrested defendant for violation of any law or ordinance. It is a reasonable assumption that if the officer had observed defendant committing a specific offense, and that he arrested her on that account, he would have so testified.

■ In connection with defendant's contention that her arrest was unlawful she complains that the trial court erred by accepting, as evidence in the case, counsel's statement that "The officer informs me she originally was booked under vagrancy", and thereafter ruling that the arrest was lawful on the basis of that statement. The city argues that the quoted statement by its counsel merely directed the court's attention to the records of the municipal court which would reflect that a charge of vagrancy was filed against defendant after her arrest and also show that she "was acquitted on that charge". We are further informed by the city that, as a result of the statement made by its counsel, the trial court did in fact take judicial notice that defendant had been charged with vagrancy. In so doing, argues the city, the court was acting within

the rule of evidence that the trial court may take judicial notice of specific facts and propositions of generalized knowledge as laid down in 9 Wigmore, Evidence, Sec. 2571(3) (3d Ed. 1940), and generally followed in this state. That rule, however, is too broad to fit the situation at hand. Missouri courts have consistently declined to take judicial notice of the records of cases tried in other courts, holding that such records must be introduced in evidence. See Adler v. Lang, 26 Mo.App. 226; Hume v. Wright, Mo.Sup., 274 S.W. 741; Daggs v. McDermott, 327 Mo. 73, 34 S.W.2d 46; Fitzmaurice v. Turney, 214 Mo. 610, 114 S. W. 504; State v. Moreland, Mo.Sup., 351 S.W.2d 33. In the last cited case the Supreme Court stated, "We know of no authority, and the state refers to none in its brief, whereby * * * the Circuit Court of Maries County was authorized to take judicial notice of the proceedings in a habeas corpus action filed in and decided by the Circuit Court of Cole County. 31 C.J.S. Evidence § 50d, p. 627." Clearly the trial court erred in receiving the statement of counsel as evidence and making it the basis of his finding that defendant's arrest was lawful.

■■■ The city still maintains the judicial notice theory and insists that this court may take judicial notice of the fact that defendant had been charged with vagrancy "to preserve the judgment". Subsequent to oral argument and submission of this case on appeal, the city transmitted to this court certified copies of what purports to be a record of the municipal court showing that defendant was found not guilty and acquitted of a charge of vagrancy lodged against her following the arrest in question. We are urged by the city to consider this purported record in our disposition of this appeal. This we decline to do because in deciding the appeal issues we are limited to the evidence in the transcript. "[W]hether records are formally introduced in evidence, or considered by the trial judge because it is a matter of record of which he can take judicial notice, such rec-

ord must be incorporated in the transcript so that the appellate court will have the exhibit before it for inspection and information." Wilson v. Berning, Mo.App., 293 S.W.2d 151. Also see Bohannon v. Camden Bend Drainage District, 240 Mo.App. 492, 208 S.W.2d 794; City of Rolla v. Riden, Mo.App., 349 S.W.2d 255.

■■■ The city argues that the officer had reasonable grounds to arrest defendant under the circumstances he related to the effect that he saw defendant in the cocktail lounge and recognized her as "a person with the reputation of a prostitute that I have arrested before" and that when defendant saw him she ran into the restaurant premises. Says the city, "Considering this testimony in the light of Section 62.-050 Kansas City Revised Ordinances, 1956, prohibiting prostitutes or lewd women from frequenting saloons, the officer had reasonable grounds for the arrest". We reject this argument. The prohibition of the ordinance runs against *prostitutes*—not persons *reputed* to be engaged in that "profession". Although the officer's testimony stigmatized defendant as a reputed prostitute, it disclosed no actual knowledge on his part that she had committed any act of prostitution or had suffered any conviction therefor. Nor does the evidence disclose facts or circumstances from which it could reasonably be inferred that the officer had any knowledge, actual or constructive, that would constitute reasonable grounds for him to believe that defendant was a prostitute, either on the basis that she had committed specific acts of prostitution or had solicited therefor, or that her acts and conduct prior to the arrest amounted to a violation of the ordinance in question. The arrest in this instance can not be held valid on the basis of the arresting officer's testimony that he arrested defendant "as a person with a reputation of a prostitute", without substantiating evidence. Additionally, the city suggests that the factor of appellant's flight upon seeing the officer should be considered in determining whether the officer had probable cause for the

arrest. We have considered the suggested circumstance and believe it to be of slight significance in view of the officer's admission that prior to March 15th he had arrested defendant every time he saw her "around there".

The meager circumstances disclosed by the testimony of officer King fall short of the standards prescribed by the law as necessary to establish that there was probable cause for defendant's arrest. It is not contemplated by the law that the citizen may be subjected to arrest by failing to heed or obey the *personal* fiat of a peace officer. Since there is no evidence from any other witness touching the question we must and do conclude that there is no substantial evidence in the entire record to support a finding that reasonable grounds existed for the officer to believe that an offense had been committed by defendant and consequently hold that the trial court erred in finding the arrest lawful and adjudging defendant guilty of resisting arrest.

The validity of the judgment of conviction in Case No. 5417 is challenged by defendant on the ground that the information charging her with disorderly conduct is insufficient in that it does not allege all the essential elements of the offense. For convenience, the information is here requoted, in pertinent part, as follows:

" * * * that * * * Katherine Mathis *and* then and there unlawfully did use loud, boisterous, offensive, threatening, abusive and profane conduct, language and behavior * * * in violation of Section 39.120(1) * * * " (sic).

Section 39.120 of the 1956 Revised Ordinances, including subsection (1) reads as follows:

"Sec. 39.120. DISORDERLY CONDUCT.—Any person who, with intent to provoke a breach of the peace or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

"(1) Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior."

Prosecutions for violation of municipal ordinances are regarded as civil actions having quasi criminal aspects. The sufficiency of a complaint (or information) in such cases will be determined by the same rules that are applicable in other civil actions. More particularly, "the complaint must specifically allege the facts which amount to the offense defined and forbidden by the ordinance." And, an information charging violation of an ordinance without specifically alleging facts amounting to violation is insufficient. See City of Raytown v. Roach, Mo.App., 360 S.W.2d 741 and Kansas City v. Franklin, Mo.App., 401 S.W.2d 949, for a more complete statement of the rules generally observed by Missouri courts in determining the sufficiency of informations and complaints charging ordinance violations, together with citations of supporting authority. These rules are supplemented by Rule 37.18 of the Missouri Rules of Practice and Procedure in Municipal and Traffic Courts, V.A.M.R., which provides: "The information or complaint shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

The "essential facts" necessary to constitute a valid charge of "disorderly conduct" as defined by ordinance, Section 39.120(1) are in substance as follows: (1) that the person sought to be charged committed any of the acts enumerated within the first subsection of the ordinance; (2) that the person committed such act or acts either with intent to provoke a breach of the peace, or whereby a breach of the peace was occasioned.

Judged by the legal standards previously noted, the information in this case is gravely defective in that it completely omits the very essence of the intended action, to-wit, a statement of "essential facts" to establish the essential element of

the charge that the acts complained of were committed by defendant *with intent to provoke a breach of the peace or did in fact occasion a breach of the peace.*[2] See Kansas City v. Sells-Floto Shows Co., 201 Mo.App. 523, 214 S.W. 269, where this court held that an information charging violation of a city ordinance which omits the very gist of the action is fatally defective, notwithstanding that same strictness is not required for pleading violation of city ordinance as is required in a criminal case. Also see City of St. Louis v. Slupsky, 254 Mo. 309, 162 S.W. 155, 49 L.R.A.,N.S., 919; City of St. Joseph v. Harris, 59 Mo. App. 122; State of Missouri v. James, 37 Mo.App. 214.

Hence the pleading does not constitute "a plain, concise and definite written statement of the essential facts constituting the offense charged", Civil Rule 37.18, and is consequently without legal effect to support the judgment of conviction.

\* \* \*

Accordingly the judgment is reversed and the defendant is discharged in each of the cases numbered 5257, 5417 and 5418.

All concur.

---

**2.** See People v. Hipple, 263 N.Y. 242, 188 N.E. 725, wherein the court said, "The essence of the charge of disorderly conduct is that a breach of the peace may be occasioned by certain enumerated acts."