KANSAS CITY, Missouri, Respondent,

v.

Frankie C. FULTON, Appellant.

No. KCD 27693.

Missouri Court of Appeals, Kansas City District.

Feb. 9, 1976.

Roy W. Brown, Kansas City, for appellant.

Aaron A. Wilson, City Atty., Louis W. Benecke, City Prosecutor, Michael L. Gatrost, Asst. City Prosecutor, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

This appeal is from a conviction for a weapon concealed on the person in violation of city ordinance. The defendant was found guilty on the de novo review of the circuit court and seeks to have the fine imposed invalidated on the primary ground that the arrest which disclosed the weapon was illegal.

The judgment of conviction rests on the testimony of Patrolman Moore of the Kansas City Police Department given on behalf

of the respondent City, the only evidence in the case. In the early morning, about 1:45 A.M., Patrolman Moore responded to a call from one Ella Simpson of 1233 Bales who reported a car prowler. The patrolman learned from her that she had seen the defendant bring his automobile to rest near her residence, discharge a passenger, turn off the lights, and with the engine still running, remain in place while the passenger walked southbound on Bales.

The officer approached the defendant, asked for identification and instructed him to step away from the vehicle. The defendant complied without resistance, exhibited a valid license, and then submitted to a frisk of his person for weapons. Manipulations of the outer garments disclosed the elongated form of a knife in the right front pocket which, upon inquiry, defendant conceded he carried for protection in his work as a bartender. The patrolman extracted a brown-handled, long, thin, knife, ten and three-quarters inches in overall length, and thereupon arrested the defendant for the concealment of a weapon on his person. As the defendant was conducted to the patrol wagon, a woman [presumably the passenger] returned to the car.

The motion of the defendant to suppress the knife as evidence of a concealed weapon on the premise that the discovery of the instrument was incident to an unlawful arrest was overruled by the trial court. On this appeal the defendant contends that § 84.440, RSMo 1969, limits the power of arrest for police officials in Kansas City to cases where there is reason to believe a person has committed, was committing, or is about to commit a violation of the law, and absent such probable cause an arrest may not be maintained.

The respondent City does not pretend that the patrolman acted upon probable cause for arrest at the time the defendant was detained and frisked, but that on the principles of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Patrolman

Moore was justified in the circumstances to stop the defendant and then to frisk him for self-protection. That is to say, although the search was not incident to a lawful arrest, the arrest was incident to a lawful search.

■ The purpose of the Fourth Amendment is to protect the privacy and security of persons against arbitrary intrusions by government. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). That is to say, the Constitution forbids the seizure of a person by the State unless there is legal cause. An arrest, under warrant [*Giordanello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958)] or without warrant [*Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)], is valid only upon probable cause. Consonant with these principles, § 84.710, RSMo 1969, authorizes a Kansas City police officer to arrest without warrant on reasonable grounds of belief that an offense of any grade has been or is being committed. *Kansas City v. Mathis,* 409 S.W.2d 280, 286[9] (Mo.App.1966).

■ The further provision of that statute [§ 84.710(2)] that

[The members of the Kansas City police force] shall also have the power to stop any person abroad whenever there is reasonable ground to suspect that he is committing, has committed or is about to commit a crime and demand of him his name, address, business abroad and whither he is going [and] may search him for a dangerous weapon whenever they have reasonable ground to believe they are in danger from the possession of such dangerous weapon by the suspect

is given effect within the constitutional principle of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) which validates detention of the person on less than probable cause for arrest under circumstances where a police officer has reasonable grounds to believe criminal activity may

be afoot and the suspect armed. *State v. Rankin,* 477 S.W.2d 72, 75[1–3] (Mo.1972).[1]

This sanction to stop on reasonable suspicion does not, as a matter of course, justify the further intrusion of a frisk. On the contrary, the authority granted the police under *Terry* [and the statute] is narrowly drawn. The justification for the initial stop rests on circumstances [*Terry v. Ohio, supra,* 392 U.S. l.c. 30, 88 S.Ct. l.c. 1884]:

> where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries . . .

The justification for the further intrusion of the person by frisk arises only from circumstances from which the reasonable inference arises that the suspect is armed and poses a danger to the officer and others about him [*Terry v. Ohio, supra,* l.c. 30, 88 S.Ct. l.c. 1884]:

> where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Whether the officer acted reasonably in the circumstances rests not on his general suspicions or surmises but on this objective standard: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio, supra,* l.c. 21–22, 88 S.Ct. l.c. 1880. These requirements of objective reasonableness and particulari-

ty were repeated first in *Sibron v. New York,* 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968):

> Before he places a hand on the person of a citizen . . . [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous . . .

and then again in *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■ These authorities establish the constitutional validity of the stop and frisk as a legitimate tool of police inquiry. We need not determine whether the initial encounter between Patrolman Moore and the defendant was on a reasonable suspicion that he was armed and engaged in some criminal enterprise, because a police officer as conservator of the peace and public safety had the inherent authority to stop an automobile for a license check of the operator. *State v. Rankin,* 477 S.W.2d 72, 75[1–3] (Mo.1972); *United States v. Turner,* 442 F.2d 1146, 1148[1–3] (8th Cir. 1971). The question remains whether, after Patrolman Moore confirmed the identification of the defendant and the validity of his license, the officer was justified in the frisk which followed on the reasonable belief that the defendant was potentially dangerous and should be disarmed for the protection of the officer.

■ A police officer may justify a forcible stop and frisk not only on the reasonable inferences drawn in light of his experience from the observed circumstances, but also on information from an informer which bears indicia of reliability. *Adams v. Williams, supra,* 407 U.S. l.c. 147[6], 92 S.Ct. 1921. The sparse evidence shows that Patrolman Moore came to the scene on the complaint of Ms. Simpson and observed the

---

1. This rule is rooted in the common law practice whereby beadles and watchmen detained, short of arrest, nightwalkers on a reasonable suspicion less than probable cause. Scurlock, Basic Principles of the Administration of Criminal Justice, 41 UMKC L.Rev. 165, 177 (1972); *State v. Grant,* 79 Mo. 113, 134 (1883).

defendant in his car, parked, headlights off and engine idling. In addition to these observed facts, Ms. Simpson reported that another occupant of the automobile had gone down the street and had not returned. The defendant responded fully to the initial overture of the patrolman, and without evasion, furtiveness or resistance, complied with the legitimate inquiry for identification and display of vehicular license. There was nothing in the manner of the defendant to excite reasonable suspicion of criminal activity, either by him alone or in complicity, or that the defendant was armed and dangerous. The clothes he wore did not betray the ominous form of a weapon beneath or give any other hint of danger. The car he operated was properly parked at the curb and the defendant was seated behind the wheel in a normal manner. The investigation of the officer, such as it was, confirmed that the defendant owned the car. Although Ms. Simpson told the officer that her suspicion had been aroused because the car passenger had alighted and gone on while the defendant remained behind, Patrolman Moore made no inquiry about his companion, where she had gone, or what they were about so early in the morning.

It is the command of the Fourth Amendment that every restraint of the person be justified; an officer may not invade the privacy of a person on whim. Nor does the right of an officer to the identification and license of a motorist allow him as a matter of routine, and without more, to lay his hand on every person of whom he makes such inquiry. *Kansas City v. Butters,* 507 S.W.2d 49, 54[7] (Mo.App.1974); *Sibron v. New York, supra,* 392 U.S. l.c. 64, 88 S.Ct. 1889.

Unlike the stop and frisk in *Terry* where an experienced officer observed antics consistent with the preparation for a robbery and where the suspect made unclear and evasive responses to the police officer; unlike *Adams* where a patrolman in a high crime area on reliable information that a person in a nearby car was bearing narcotics and a pistol and where the suspect failed to comply with the request of the officer to open the door—thus disclosing the pistol to view; and unlike the stop and seizure in *Rankin* where police in a patrol car observed two men driving away hurriedly from a parking lot when the police appeared and where the officers were keeping a close surveillance because of the incidence of burglaries, thefts and vandalism, and where, when stopped, the police detected the handle of a weapon in open view; the frisk by Patrolman Moore was unjustified and without reasonable basis to believe that the defendant was armed and dangerous.

The weapon seized from the frisk was illegal evidence and should have been suppressed by the trial court.

The judgment is reversed.