**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert Charles SINGLETON,
Defendant-Appellant.**

No. 37181.

Missouri Court of Appeals,
St. Louis District,
Special Division.

Dec. 27, 1977.

Allen I. Harris, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Sam C. Bertolet, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

SAMUEL E. SEMPLE, Special Judge.

Appellant, Robert Charles Singleton, was charged and convicted by a jury of stealing goods with a value of at least fifty dollars, § 560.156, subsection 2, § 560.161, subsection 1(2), RSMo. 1969, and having been tried under provisions of § 556.280, RSMo. 1969, was sentenced by the court to seven years imprisonment. Appellant appeals from that conviction and sentence. We affirm.

Appellant's basic contention on appeal is that his Fourth Amendment rights were violated by an unlawful search and seizure and that the trial court thus erred in admitting the stolen merchandise into evidence despite appellant's timely motion to suppress.

The evidence presented at the hearing on the Motion to Suppress established that on the evening of March 29, 1974, pursuant to a tip from a security guard that a known shoplifter was in the area, several officers of the Des Peres Police Department were dispatched to the West County Shopping Center to observe the activities of Ronald Jefferson. Police followed Jefferson from store to store and then to an automobile in the parking lot of the Center. After Jefferson entered the vehicle the police approached and observed a suit and other articles of clothing in his possession that appeared to have been stolen. Jefferson confessed to the theft and was arrested. Jefferson told the police that he had ridden to the shopping center with two other men and that all three had come with the intent of stealing whatever they could because they were all drug addicts. The two other men were identified as "Charles," the owner of the car, and Robert Green.

The police officers, after receiving this information from Jefferson, put the car in which Jefferson had placed the stolen merchandise under surveillance and Jefferson was held in the police car. Approximately fifteen to twenty minutes later appellant (Singleton) approached the car and Jefferson told the police officers that appellant was one of the other men with him. When appellant entered the car Officer Sutton then approached and observed appellant bending over inside the car apparently reaching for something from the floor board. Officer Sutton identified himself and appellant turned around startled. Appellant was told to get out of the car and was frisked by Officer Sutton. Several hard objects were felt at the waist area under the wind breaker jacket that appellant was wearing. Sutton opened the jacket and found three cameras stuck into appellant's waist band. The cameras were seized.

Appellant's motion to suppress was overruled four days before the trial of the case began. It was established at the trial that the appellant was advised of his rights and informed that he was under arrest after Officer Sutton discovered the cameras and seized them. Appellant then made a statement to the effect that he had stolen the cameras from the Famous-Barr stockroom. The three cameras were introduced in evidence over objection by the defense.

Appellant claims that the search and seizure of the cameras from his person was not justified under any of the exceptions to the Fourth Amendment and argues that the only act of the appellant was to approach a car that was under surveillance. We hold that the stop and search of appellant by Officer Sutton in this case was justified under the "investigatory stop" or "protective search" analysis developed in the cases of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); and *Peters v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ The general rule requires prior approval by a neutral judge or magistrate as a prerequisite to a valid search, *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, *reh. den.* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). The Supreme Court in *Terry* recognized that historically police have deemed it essential to take action based upon quickly developing events when there is no time to resort to the warrant procedure. The *Terry* "stop and frisk" doctrine is now recognized as an exception to the general rule enunciated in *Coolidge,* and the now familiar conclusion in *Terry* is that:

> "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquires, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 88 S.Ct. at 1884–1885.

■ An objective standard is used in determining whether facts available to the officer at the moment of the seizure of the suspect's person warrant a person of reasonable caution in the belief that the action taken is appropriate. *Terry,* 88 S.Ct. at 1880. "[In] justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry,* 88 S.Ct. at 1880; see also *State v. Johnson,* 529 S.W.2d 658, 664 (Mo. App.1975).

Appellant appears to contend that the police had no more reason to suspect him of suspicious or criminal activity than they would any citizen who entered a car in the parking lot of a shopping center. The evidence in this case does not warrant such an assertion at the time of the stop and protective search of appellant. Officer Sutton knew or had reasonable grounds to believe: (1) appellant and two other persons were there at the shopping center to steal whatever they could because they were all drug addicts; (2) stolen merchandise had been recovered from the car and one of appellant's companions (Jefferson) had been arrested for stealing; (3) appellant's companion, Jefferson, had implicated appellant as a participant in the plan to steal whatever they could; (4) Jefferson identified appellant as he approached the car; (5) appellant wore a jacket that covered his waist; (6) appellant upon entering the car leaned over and appeared to be reaching for something on the floor board and turned around startled when Officer Sutton identified himself.

■ Although the stop is reasonable the officer must also be justified in the belief that the subject could be armed to proceed with the "frisk." The test is whether a reasonably prudent man would be justified in the fear that his safety or that of others was in danger. *Terry,* 88 S.Ct. at 1883.

■ The limited search conducted in this case was not violative of appellant's Fourth Amendment rights. Even if the strong likelihood was that appellant had committed the crime furtively and without the use of weapons, which Officer Sutton could not be certain of, it is not unreasonable to fear that one who plans to unlawfully steal property of others in broad daylight would carry a weapon to aid an escape should he be discovered. Stealing invites resistance and possible pursuit. The fact that appellant was believed to be an addict and planned the activity in advance increases the likelihood that he would be armed. The widespread use of guns and knives by persons engaged in criminal activities has resulted in the killing and wounding of many law enforcement officers and such fact is relevant to an assessment of the need for law enforcement officers to protect themselves. *Terry,* 88 S.Ct. at 1881.

■ Information obtained from a reliable informant or third party, when coupled with a strong basis for crediting the information and reasonable corroboration, can justify an investigative stop as well as constitute probable cause for an arrest. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); *State v. Wiley,* 522 S.W.2d 281, 288 (Mo. banc 1975); *State v. Gant,* 490 S.W.2d 46, 48 (Mo.1973); *State v. Sanders,* 530 S.W.2d 749, 752 (Mo.App. 1975). The credence to be given the information received from a third party informant is a factual question to be determined under the circumstances of each case. The facts in this case clearly indicate a justified reliance by Officer Sutton on Jefferson's statements. Jefferson had implicated himself in a theft, had made a confession, the information concerning appellant was given in the course of the confession and he had no motive to mislead the police at the time of his statements.

*Peters,* 88 S.Ct. 1889, supports our affirmance. Peters was one of two men an off-duty police officer suspected of burglarizing or attempting to burglarize apartments in his building in the early afternoon. Peters' criminal plans apparently did not provide for a show of force, nor the use of weapons. Hearing a noise at his door, the officer observed through the peephole two men he knew to be strangers to his building "tiptoeing" toward the stairway. He put on clothes, armed himself, observed similar conduct again and slammed his door as he entered the hallway. The two men then fled down the stairway and the officer gave chase and captured Peters. The officer patted Peters down and felt a hard object in a pocket that he felt could have been a knife. The officer reached in and removed from the pocket an envelope containing burglar tools, the possession of which formed the basis of Peters' conviction.

While the majority found probable cause to arrest Peters and thus upheld the search as incident to a valid arrest, Justice White felt that the affirmance should be based on the fact that "there was probable cause to stop Peters for questioning and thus to frisk him for dangerous weapons." *Peters,* 88 S.Ct. at 1905. *Sibron,* 88 S.Ct. 1889, relied upon by appellant, is distinguishable on facts indicating a search to discover evidence instead of weapons under circumstances not justifying a reasonable fear for the officer's or others' safety.

The Missouri cases cited by appellant are distinguishable. In *State v. Hall,* 508 S.W.2d 200 (Mo.App.1974), the officer took defendant into custody and had defendant drive himself to the police station rather than be taken in a police car. While so going to the police station the officer searched the glove compartment of defendant's car and discovered incriminating evidence of a crime the officer did not even suspect defendant of committing. The search was held not justified under the ruling in *Terry* and the evidence was suppressed. In the case of *Kansas City v. Butters,* 507 S.W.2d 49 (Mo.App.1974), also cited by appellant, it was held that a standard police department procedure of frisking "every male we came in contact with" to insure that they do not have a weapon could not circumvent the constitutional analysis required by *Terry.*

■ While the sole justification for the "patdown" search pursuant to an investigative stop is to discover weapons that could be used for an assault, *Terry,* 88 S.Ct. at 1884, it is clear that other evidence discovered in the course of such a search can be seized. *Sibron,* 88 S.Ct. at 1905 (White, J., concurring) and 88 S.Ct. at 1910 (Harlan, J., concurring). The cameras found on appellant's person in this case were properly admitted into evidence.

Appellant argues that the search cannot be justified under the principles of "search incident to arrest" because (1) Officer Sutton testified that he did not arrest appellant until after the search, (2) Officer Sutton had no knowledge that a crime had been committed prior to the search, and (3) *Hall,* 508 S.W.2d at 205, states that an incidental search must be "incident to, *following* and not *preceding* a *lawful* arrest . . . ."

■ We hold there was probable cause to arrest appellant at the time the search was made by Officer Sutton and that the search can be upheld on that basis. Such a policy allows the court to determine the validity of a search by objective standards rather than relying on the officer's subjective belief as to when he has probable cause to arrest. *United States v. Skinner,* 412 F.2d 98, 103–104 (8th Cir.), *cert. den.* 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969); *United States v. Taylor,* 428 F.2d 515, 519–520 (8th Cir. 1970), *cert. den.* 401 U.S. 983, 91 S.Ct. 1208, 28 L.Ed.2d 335 (1971).

■ We hold that there was probable cause for Officer Sutton to effect a warrantless arrest of appellant. Probable cause requires more than mere suspicion that a subject has committed a crime, *Henry v. United States,* 361 U.S. 98, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959), but a "broad gulf exists" between the quantum of evidence necessary to establish guilt and that necessary to establish probable cause for a warrantless arrest. *State v. Grady,* 548 S.W.2d 601, 608 (Mo.App.1977). The test is whether the officer had reasonable grounds to believe that the subject had committed or was in the process of committing a crime. *Gant,* 490 S.W.2d at 48; *State v. Robinson,* 484 S.W.2d 186, 190 (Mo.1972); *Wiley,* 522 S.W.2d at 287; *Grady,* 548 S.W.2d at 608; *Adams,* 92 S.Ct. at 1924.

*Draper,* 79 S.Ct. 329, supports a finding of probable cause to arrest appellant on suspicion of theft at the time Officer Sutton ordered him from the automobile. In *Draper* a government agent was given information by a reliable informant that a subject—a stranger to the arresting officer—would alight from a train on one of two days wearing certain clothing and carrying a bag and that he would be walking fast and carrying narcotics. The agent "personally verified every facet of the information . . . except whether [suspect had the heroin] . . . . And surely, with every other bit of . . . information being thus personally verified, [the agent] had 'reasonable grounds' to believe that the remaining unverified bit of . . .

information—that [the suspect] would have the heroin with him—was likewise true." *Draper,* 79 S.Ct. at 333. Officer Sutton was equally justified in crediting Jefferson's statement that appellant was involved in a stealing "mission" at the time of his search and in believing he had stolen merchandise in his possession at the time he entered the car.

We have reviewed all authority cited by appellant in support of his contentions and conclude that the search was not violative of his Fourth Amendment rights and that there is no error requiring reversal. The motion to suppress the cameras as evidence at trial was properly overruled.

The judgment of the trial court is affirmed.

SIMEONE, C. J., DOWD and STEWART, JJ., and DONALD L. MASON, Special Judge, concur.