Dennis PALCHER, Appellant,

v.

J.C. NICHOLS COMPANY, Respondent.

No. WD 41346.

Missouri Court of Appeals,
Western District.

Jan. 23, 1990.

John Wray Kurtz, Kansas City, for appellant.

Larry L. McMullen and Martin M. Loring, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for respondent.

Before SHANGLER, P.J., and
TURNAGE and KENNEDY, JJ.

SHANGLER, Presiding Judge.

The plaintiff Palcher brought suit against the J.C. Nichols Company for false arrest and malicious prosecution as a result of an incident on the Kansas City Country Club Plaza on October 13, 1985. The claims were submitted to the jury, and verdicts were returned in favor of the defendant J.C. Nichols Company on both counts. The plaintiff appeals from the judgment entered on those verdicts.

The plaintiff Palcher and two male friends, John Kostelac and Dan Dumovich, drove to the Kansas City Country Club Plaza and parked on the second level of the Bonwit Teller garage. Kostelac walked down the ramp for exit onto the street. Palcher and Dumovich lingered next to the car to discuss where they were going. As they were so engaged, a Plaza patrol vehicle came by slowly and the driver, Plaza security officer Karney, surveilled them. The incidence of car burglary is a common problem on the Country Club Plaza, he explained, so that his attention was captured by the two men—Palcher and Dumovich—who, as he observed, were peering into a vehicle parked next to them. He was concerned that a car burglary was underway. They were in the same posture on the return patrol down the ramp of the parking lot, so Karney parked the vehicle on the street, came up the stairwell and approached them. Karney testified that he saw Palcher "exposing himself urinating against the south wall." He actually saw the head of the penis and a flow of urine. Karney advised Palcher that what he did was a violation of the law. Palcher denied that he was urinating. Dumovich also protested that his friend was innocent. Karney then advised them: "I will let you go this time. If you come back to the Plaza for 2 or 3 weeks, I will arrest you for trespassing." Dumovich again insisted

Palcher did not do anything wrong, and Karney thereupon arrested Dumovich.

Karney then frisked Palcher, cuffed the hands behind the back, and led him away. Dumovich continued to protest, and Karney radioed for assistance. Soon Officer Rishel arrived in the company of Ratterman, on-duty supervisor of security guards. Rishel, an off-duty detective with the Kansas City, Missouri, Police Department, was in the uniform of a police officer. She worked the Plaza Security duty as a second job. Karney told her that he observed Palcher urinating against a wall in a parking stall, and so placed him in arrest and in handcuffs. Karney explained that he called for assistance because Dumovich was interfering with the movement of Palcher to a detention area. The officer placed Dumovich in arrest for disorderly conduct on the complaint of Karney. They were both taken to the Plaza Security Office, and thence to the police station. There they remained in a holding cell for about an hour and then were released on bond.

Palcher engaged an attorney to defend against the ordinance charge of indecent exposure, and upon a trial was acquitted.

The claims of false arrest and malicious prosecution were submitted to the jury and found against the plaintiff. Instructions on punitive damages were also tendered by the plaintiff, but refused by the court. On this appeal, Palcher complains only of instructions given, not of those withheld. The plaintiff contends that the affirmative defense instruction submitted by the defendant to the false arrest claim was prejudicially erroneous, as was the converse to the malicious prosecution theory.

False arrest was submitted by Instruction Number 7 and the common law affirmative defense of justification for arrest was submitted by Instruction Number 8.

INSTRUCTION NUMBER 7:

Your verdict must be for plaintiff if you believe:

Defendant intentionally restrained or intentionally instigated the restraint of plaintiff against his will unless you believe plaintiff is not entitled to recover by reason of Instruction Number 8.

INSTRUCTION NUMBER 8:

Your verdict must be for defendant under Instruction Number 7 if you believe:

that defendant, in restraining plaintiff, had a *reasonable suspicion* that plaintiff had indecently exposed himself in violation of Kansas City, Missouri, ordinance.

The phrase *"reasonable suspicion"* as used in this instruction means a *suspicion* based upon facts which would warrant an ordinarily cautious and prudent person in believing plaintiff Dennis Palcher was guilty of the offense charged [emphasis added].

■ MAI contains no paradigm for a submission of common law false arrest[1] or for a submission of an affirmative defense of common law justification for an arrest.[2]

■ Justification for detention and arrest of a person based on *reasonable cause* may be pleaded by the defendant and then submitted to the jury by instruction where the evidence supports the defense. *Vanneman v. W.T. Grant Co.*, 351 S.W.2d 729, 731–732[5] (Mo.1961). The defendant fashioned affirmative defense Instruction Number 8 after the text of § 84.710, RSMo 1986, which defines the powers of members of the police force of Kansas City to stop and arrest:

*They shall have power* within the city or on public property of the city beyond the

---

**1.** The verdict director for false arrest, Instruction Number 7, is after the pattern of MAI 23.04 (1989 Supp.)—Verdict directing—False Imprisonment. There is no contention that the use of that form for that purpose was improper. The elements of both false imprisonment and false arrest are functionally virtual. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767[3–5] (Mo. banc 1984).

**2.** MAI 32.13 (1981) formulates an affirmative defense of justification for arrest in a false imprisonment [and hence false arrest] case, but for a shopkeeper as to a shoplifter. The defense that pattern instruction expresses is that provided for in § 537.125, RSMo (1986). The affirmative defense Instruction Number 8 undertakes to derive is from the text of § 84.710, RSMo (1986).

corporate limits thereof *to arrest*, on view, *any person* they see violating or *whom they have reason to suspect of having violated any law of the state or ordinance of the city* .... *They shall also have the power to stop any person abroad whenever there is reasonable ground to suspect that he is committing, has committed or is about to commit a crime* and demand of him his name, address, business abroad and whither he is going.[3] [emphasis added].

The plaintiff argues that the proper standard to justify the exercise by the police of the power to arrest is probable cause, and not suspicion—however reasonable. The defendant asserts the text of the statute to validate the affirmative defense.

■ The argument the defendant makes is literal and without resort to the judicial gloss that informs the text of the statute. Those decisions discredit the instruction. It has been made explicit by repeated opinions of this court that § 84.710 [and cognate § 84.440] empowers a Kansas City police officer to effect a lawful warrantless arrest upon *reasonable ground to believe* that the person committed a felony or misdemeanor or violated an ordinance of the city, or was in the commission of such an offense. *Kansas City v. Mathis*, 409 S.W.2d 280, 286–287[8–10] (Mo. App.1966); *Kansas City v. Butters*, 507 S.W.2d 49, 53–54[6] (Mo.App.1974); *Kansas City v. Fulton*, 533 S.W.2d 677, 679 (Mo.App.1976). The *reasonable ground to suspect* component of § 84.710, *Fulton* explains, validates the detention of a person on less than probable cause for arrest. That sanction to stop on reasonable suspicion within the constitutional principle of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), however, does not empower arrest on less than probable cause. *United States v. Sokolow*, — U.S. —, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989); *Fulton* at 680. In the absence of a *reason to believe* that a person committed or was in the commission of a violation of the law, *Mathis*, *Butters* and *Fulton* explain, a

Kansas City police officer has no power to arrest under § 84.710. *See also State v. Rankin*, 477 S.W.2d 72, 75[1–3] (Mo.1972). The construction a court gives to statutory language becomes a part of the text of the statute as if it had been so amended by the legislature. *State v. Crawford*, 478 S.W.2d 314, 317 (Mo.1972). Accordingly, § 84.710 is to be read to empower a Kansas City police officer to arrest only upon probable cause. *Id.*

■ The meaning of *probable cause* for arrest is fixed: At the time of arrest, the officer must have known facts sufficient for a prudent person to believe that the subject committed, or was committing, an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Berry*, 609 S.W.2d 948, 952[6–11] (Mo. banc 1981). *Probable cause* for arrest and *reasonable ground* for arrest both rest on the reasonable *belief* of the officer who acts that the person arrested committed or was in the commission of a crime. *State v. Singleton*, 560 S.W.2d 379, 384[8] (Mo.App. 1977). An instruction that submits the affirmative defense of justification for arrest with less certainty than *belief*, therefore, misstates the premise of the defense. *Bergel v. Kassebaum*, 577 S.W.2d 863, 869 (Mo.App.1978); MAI 16.05 (1981) & Committee's Comment; *Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628, 633[4] (Mo. banc 1977). An instruction that dilutes that belief by "may have committed" or justifies an arrest by suspicion of guilt does not satisfy the requirement of probable cause. *Bergel v. Kassebaum*, 577 S.W.2d at 868–869[5]; *State v. Singleton*, 560 S.W.2d at 384[8].

■ Instruction Number 8 justifies the arrest by the security officer on the *reasonable suspicion* that Palcher indecently exposed himself in violation of the ordinance. It is palpably in error. That the instruction defines *reasonable suspicion* in terms of *believing* does not expunge the error or redress the misdirection to the

---

**3.** This statute in terms applies only to police officers. The police power is also conferred by commission on private officers by the Kansas City Board of Police Commissioners under 17 C.S.R. 10–2.010(3) for exercise on the property assigned to them for protection.

jury. It defines doubt in terms of belief and so introduces an ambivalence in the essential component of the affirmative defense that cannot be reconciled by the finder of fact. It was prejudicial for that reason. The false arrest claim requires a new trial. *Bergel v. Kassebaum*, 577 S.W.2d at 869[6].

The plaintiff also submitted the separate theory of malicious prosecution by Instruction Number 11, and the defendant submitted converse Instruction Number 12.

INSTRUCTION NUMBER 11:

Your verdict must be for plaintiff if you believe:

First, defendant instigated a judicial proceeding against plaintiff which terminated in favor of plaintiff, and

Second, in so doing defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds, and

Third, the plaintiff was thereby damaged

unless you believe plaintiff is not entitled to recover by reason of Instruction Number 12.

The phrase "reasonable grounds" as used in this instruction means the existence of facts which would warrant an ordinarily cautious and prudent person in believing plaintiff Dennis Palcher was guilty of the offense charged.[4]

INSTRUCTION NUMBER 12:

Your verdict under Instruction Number 11 must be for defendant unless you believe:

that defendant acted primarily for a purpose other than that of bringing an offender to justice.

The plaintiff complains that Instruction Number 12, submitted as a converse of an element of malicious prosecution verdict director Instruction Number 11, was erroneous in form and prejudicial in effect. The error was the omission of the introductory phrase *in so doing* and the final phrase

*and acted without reasonable grounds.* We conclude that whatever deviation inheres in the converse was not prejudicial, and so affirm the judgment for defendant entered on the malicious prosecution claim.

■ A defendant is entitled to converse the verdict director of the plaintiff. MAI 33.01 (1981) allows the defendant the option of a true converse or of an affirmative converse. Instruction Number 12 undertakes a true converse—a submission that requires no independent evidence for support, but rests rather upon the contention of the adversary that the plaintiff failed the burden to prove some element of the case. *Sall v. Ellfeldt*, 662 S.W.2d 517, 523[2] (Mo.App.1983). A true converse may submit the exact converse of plaintiff's submission, or the converse of any of the propositions or elements essential to that recovery. MAI 33.01 (1981) Converse Instruction—General Comments at 487. It is for that reason that "[t]he form book for the language of the converse instruction, other than the introductory phrase, is the verdict director itself." *Id.* at 488. An instruction that varies from a prescribed MAI form constitutes error, the prejudicial effect to be determined by the court. *Powers v. Ellfeldt*, 768 S.W.2d 142, 146[10] (Mo.App.1989).

■ The first complaint of erroneous deviation—the omission of the *in so doing* introduction to proposition second—is a variation easily accommodated for sense by the jury within the full text of the verdict director and the converse. The only action of the defendant that the verdict director alludes to is the instigation of the prosecution against the plaintiff. The conversed element, that "defendant acted primarily for a purpose other than that of bringing an offender to justice," therefore, could only refer to the instigation of the prosecution. The omission of the connective *in so doing* from the statement of the converse, therefore, presented no risk that the legitimate burden of proof on that element of

---

**4.** There is no contention that the malicious prosecution verdict director does not conform to MAI 23.07, the model for the submission of that theory. Paragraph *Second* of Instruction Number 11, the "malice" component of the instruction, was rephrased to conform with *Sanders v. Daniel Int'l Corp.*, 682 S.W.2d 803, 814 n. 4 (Mo. banc 1984) and so properly modifies model MAI 23.07.

the cause of action was distorted or misdirected. *Sall v. Ellfeldt*, 662 S.W.2d at 526[11]. The jury could not have been misled or misunderstood the import of the converse. It was legally sufficient. *Wims v. Bi–State Dev. Agency*, 484 S.W.2d 323, 325[3] (Mo. banc 1972).

 The plaintiff argues also that the omission from converse Instruction Number 12 of the final phrase of proposition second of verdict director Instruction Number 11—*and acted without reasonable grounds*—was also a prejudicial deviation from MAI. He argues that the omission effectively "splits an element of the verdict director," and so violates the formula of MAI that a defendant may converse a proposition or an element of the verdict director. It is evident that the plaintiff conceives a proposition of a verdict director and an element of the cause of action a verdict director submits to be equivalents. They are not. There are verdict directors that contain several conjunctive elements in the same proposition in support of the same theory of recovery. *See e.g.* MAI 25.04 (1981), Verdict Directing—Strict Liability—Product Defect; *and see* MAI (1981) 1963 Report to Missouri Supreme Court, p. XXXVIII. In such a case, a defendant may properly converse a separate element of the verdict director although that element is conjoined with another in the same proposition, and need not converse the entire proposition. *Lietz v. Snyder Mfg. Co.*, 475 S.W.2d 105, 109–110[4–6] (Mo.1972); *Anderson by Anderson v. Cahill*, 528 S.W.2d 742, 747[3] (Mo. banc 1975).

The verdict director for the malicious prosecution cause of action, as formulated by MAI 23.07 (1981) and reformulated by *Sanders v. Daniel Int'l. Corp.*, 682 S.W.2d 803 (Mo. banc 1984), is of that kind. There are six elements to be proven and submitted for a recovery on the malicious prosecution theory.[5] MAI 23.07 collapses them into three propositions.[6] *Sanders* reordered the law of malice in cases of intentional tort and redefined that element in a malicious prosecution action.[7] *Sanders* was the controlling authority at the time this action was tried and submitted and the plaintiff conformed proposition second of Instruction Number 11 to its direction. That reformulation of proposition second, as did the antecedent version of MAI 23.07, submits *two* separate elements of the malicious prosecution cause of action: the presence of malice and the absence of probable cause. The defendant was entitled to converse the element of malice and not the element of absence of probable cause, although both elements were submitted in the same proposition. *Lietz v. Snyder Mfg. Co.*, 475 S.W.2d at 109[4–6]. Instruction Number 12 does that.

The judgment entered on the verdict for the defendant on the malicious prosecution action is affirmed.

The plaintiff also raises two contentions of evidentiary error. They are not apt to recur on an eventual retrial of the false arrest claim. They do not require our review on this appeal.

The judgment for the defendant on the malicious prosecution claim is affirmed. The judgment on the false arrest claim is reversed and remanded for a new trial.

All concur.

---

5. *Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479, 483[1–6] (Mo.1972) enumerates the elements of a malicious prosecution action as: (1) commencement of a prosecution against plaintiff, (2) its legal causation by the defendant, (3) its termination in favor of plaintiff, (4) the absence of probable cause therefor, (5) the presence of malice, (6) damage to the plaintiff.

6. MAI 23.07 directs a verdict for the plaintiff on a malicious prosecution action on the belief that (1) defendant instigated a judicial proceeding against plaintiff which terminated in favor of the plaintiff, and (2) in so doing defendant acted maliciously and without reasonable grounds, and (3) plaintiff was thereby injured.

7. *Sanders*, at 814[8], n. 4, directs that—in conformance with its holdings—

The second paragraph of MAI 23.07 should be amended as follows:

Second, in so doing defendant acted primarily for a purpose other than that of bringing an offender to justice and acted without reasonable grounds, and ...